IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASSANDRA LUSTER, INDIVIDUALLY AND A/N/F OF D'ANDRA LUSTER, A MINOR CHILD; DAMON LUSTER; DESMOND LUSTER, JR., BEVERLY DIANA LUSTER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DESMOND LUSTER, SR. | § § § § § § § § | CIVIL ACTION NO. 3:16-cv-00396-B |
| Plaintiffs, | § § | |
| vs. | § § | |
| CITY OF DALLAS, ET AL. | § § | |
| Defendants. | § § | |

**DEFENDANT PILOT TRAVEL CENTERS, LLC'S
BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I. STATEMENT REGARDING NATURE AND STAGE OF THE CURRENT PROCEEDING ……………… 4

II. SUMMARY JUDGMENT EVIDENCE ……………………………………………………………..…… 7

III. STATEMENT OF UNDISPUTED FACTS ……………………………………………………………...7

IV. SUMMARY JUDGMENT STANDARD ……………………………………………………………………. 8

V. ARGUMENT & AUTHORITIES …………………………………………………………………...8

    A. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PILOT'S CONDUCT IN HIRING, TRAINING OR SUPERVISING TOLERTON CANNOT, AS A MATTER OF LAW, CONSTITUTE A PROXIMATE CAUSE OF THE INJURIES AND DAMAGES SUSTAINED BY PLAINTIFFS……………………………….......................................................... 9

        1. APPLICABLE LAW: NEGLIGENT HIRING, TRAINING AND SUPERVISION…………… 9

        2. OGG V. DILLARD'S, INC. IS DISPOSITIVE OF PLAINTIFFS' CLAIMS…………………10

        3. PLAINTIFFS HAVE JUDICIALLY ADMITTED THAT TOLERTON WAS ACTING AS AN ON-DUTY OFFICER WHEN HE SHOT DESMOND AND DETAINED DAMON………………………………………………………………………….. 12

        4. PLAINTIFFS' JUDICIAL ADMISSIONS OF ON-DUTY CONDUCT NOTWITHSTANDING THE SUMMARY JUDGMENT EVIDENCE CONCLUSIVELY ESTABLISHES THAT TOLERTON WAS ACTING AS AN ON-DUTY OFFICER WHEN HE SHOT DESMOND AND DETAINED DAMON …………………………………………………………………………….. 13

    B. EVEN IF TOLERTON HAD NOT BEEN PERFORMING HIS PUBLIC DUTIES AT THE TIME THE INCIDENT OCCURRED, HIS CONDUCT IN SHOOTING DESMOND AND DETAINING DAMON WAS NOT FORESEEABLE TO PILOT AS A MATTER OF LAW……………………………………………14

        1. NOTHING IN TOLERTON'S PAST MADE HIS CONDUCT FORESEEABLE TO PILOT …. 15

        2. PRIOR ALTERCATIONS INVOLVING TOLERTON ON PILOT'S PREMISES DID NOT PLACE PILOT ON NOTICE THAT RETAINING TOLERTON WOULD CREATE A RISK OF HARM TO THE PUBLIC ………………………………………………………………………… 15

    C. PILOT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR PUNITIVE/EXEMPLARY DAMAGES…………………………………………………………...16

    D. DAMON LUSTER IS NOT ENTITLED TO RECOVER FROM PILOT FOR THE DEATH OF HIS BROTHER DESMOND LUSTER PURSUANT TO THE TEXAS WRONGFUL DEATH ACT………..16

VI.     CONCLUSION AND PRAYER ………………………………………………………… 17

# **TABLE OF AUTHORITIES**

**Statutes and Regulations**

- 42 U.S.C. § 1983 ............................................................................................. 6
- FED. R. CIV. P. 56(a) ....................................................................................... 8
- TEX. CIV. P. & REM. CODE ANN. § 71.004(b) ..................................................... 16
- TEX. CODE CRIM. PROC. ANN. art. 2.13 (West 2015) ........................................... 13
- TEX. PENAL CODE ANN. Sec. 42.01, 42.12 ........................................................ 13

**Cases**

- *Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, writ denied) ................................................................................. 10
- *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986) ........................................ 8
- *City of Dallas v. Half Price Books*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ) ........................................................................................................ 13
- *Cunningham v. Haroona*, 382 S.W.3d 492, 507 (Tex. App.—Fort Worth 2012, pet. denied) ...................................................................................................... 16
- *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987) ......................... 12
- *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) ............ 14
- *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ............... 9
- *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) ......................... 10, 14, 15
- *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ............................................................................................. 10
- *Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 564 (Tex. App.—Dallas 1996, no writ) ........................................................................ 11, 12
- *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) ..................... 8
- *Morgan v. City of Alvin*, 175 S.W.3d 408, 417 (Tex. App.—Houston [1st Dist.] 2004, no pet.) .......................................................................................................... 13
- *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.) ..................................................................................................... 9, 10
- *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 421 (Tex. App.—Dallas 2007, pet. denied) ................................................................................................ 10, 11, 12, 13, 14
- *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995) ......... 14
- *Safeshred, Inc. v. Martinez*, 365 S.W.2d 655, 660 (Tex. 2012) .............................. 16
- *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) .................................. 14
- *Vernon v. City of Dallas*, 638 S.W.2d 5, 8-9 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ............................................................................................................ 13

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASSANDRA LUSTER, INDIVIDUALLY AND A/N/F OF D'ANDRA LUSTER, A MINOR CHILD; DAMON LUSTER; DESMOND LUSTER, JR., BEVERLY DIANA LUSTER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DESMOND LUSTER, SR. | § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:16-cv-00396-B |
| vs. | § § | |
| CITY OF DALLAS, ET AL. | § § | |
| Defendants. | § § | |

**DEFENDANT PILOT TRAVEL CENTERS, LLC'S
BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE BOYLE:

Pilot Travel Centers, LLC ("Pilot") files this Brief in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 as to all claims of Plaintiffs Cassandra Luster, Individually and a/n/f of D'Andra Luster, a minor child, Damon Luster, Desmond Luster, Jr., and Beverly Diana Luster, Individually and as Administrator of the Estate of Desmond Luster, Sr. In support of the Motion, Pilot respectfully shows the Court as follows:

**I.
STATEMENT REGARDING NATURE AND STAGE OF THE CURRENT PROCEEDING**

This case arises from a tragic officer-involved shooting (hereinafter referred to as "the Incident") in which an on-duty officer of the Dallas Police Department ("DPD"), Aaron Tolerton

4

("Tolerton"), shot and killed decedent Desmond Luster ("Desmond") on February 9, 2015. Moments before the shooting occurred, Tolerton was working an off-duty security job for the Flying J truck stop located at the northwest corner of Bonnie View Road and Interstate 20 in Dallas. After being altered by Flying J employees and customers that gunshots were being fired outside the Flying J premises, Tolerton received a call on his police radio indicating that a man driving a blue pick-up truck was firing a weapon near Tolerton's location. Tolerton, dressed in his DPD uniform and badge, proceeded to the exit of the Flying J on foot to investigate. When Tolerton looked north on Bonnie View road, he saw Desmond's blue pick-up truck sitting stationary on Bonnie View Road near the intersection of Riverside Drive. Tolerton witnessed Desmond firing a gun at two individuals who were running southbound on Bonnie View Road away from Desmond's location and towards Tolerton. A later investigation would reveal that Desmond, a resident of the neighborhood surrounding the Flying J, suspected these two individuals of burglarizing his home moments before the shooting.

Tolerton, now standing in a grassy area between the Flying J fence line and Bonnie View Road, ordered one of the fleeing individuals to stop and lie face down. As Tolerton issued these commands, Desmond was driving his pick-up at a high rate of speed southbound on Bonnie View Road advancing on Tolerton's location, ultimately jumping the curb and continuing a path towards Tolerton and his detainee. Tolerton verbally ordered Desmond to stop, and when he did not, Tolerton opened fire on the vehicle with his duty weapon. Desmond's brother, Damon Luster ("Damon") was also involved in the pursuit of the suspected burglars, and upon arriving at the scene was detained and handcuffed by Tolerton and other DPD officers. Desmond ultimately died from the gunshot wounds suffered in this Incident.

Plaintiffs brought this suit against the City of Dallas ("the City"), Officer Tolerton and Pilot Travel Centers, LLC, the owner and operator of the Flying J location where Tolerton was working just prior to the Incident. Plaintiffs bring direct (non-vicarious) claims of negligent hiring, training and supervision against Pilot alleging that the company failed to adequately investigate two prior incidents in which Tolerton used physical force to remove individuals from the Bonnie View Road facility in 2012 and 2014.[1] Plaintiffs bring claims against the City and Tolerton for excessive force (Desmond) and false arrest (Damon) pursuant to 42 U.S.C. § 1983. In support of their claims against the City and Tolerton, Plaintiffs' live pleading clearly and unequivocally states that ". . . at all times material hereto, Defendant Tolerton was acting in the scope of his employment as an agent, servant, and employee of the City of Dallas, specifically the DPD, within its executive branch and was performing a governmental function." In addition to this judicial admission of Tolerton's on-duty status, the summary judgment evidence conclusively establishes that Tolerton was acting as an on-duty officer for DPD at the time the time Desmond was shot and Damon was detained.

As the authorities below make clear, because Tolerton had become an on-duty DPD officer at the time he shot Desmond and detained Damon, as a matter of law Pilot's conduct in hiring, training or supervising Tolerton could not be a proximate cause of Desmond's death or Damon's detention. In other words, under Texas law a private company's conduct in hiring, training or supervising a peace officer can never be a proximate cause of injuries caused by that officer in furtherance of his official duties. Therefore, Pilot is entitled to summary judgment as to all of

---

[1] Plaintiffs' Complaint initially alleges that Pilot's negligence caused both Desmond's death and Damon's "injuries," but does not define which of Damon's "injuries" Pilot allegedly caused (*See* Plaintiffs' Fourth Amended Petition, ¶ 4). Later in a section entitled "Negligence of Defendant Pilot Travel Centers," Plaintiffs make no mention of Damon and allege only that Pilot's negligence caused Desmond's death. (*See* Plaintiffs' Fourth Amended Petition, ¶ 117-118). Out of an abundance of caution, Pilot seeks summary judgment as to all claims, if any, asserted by Damon against Pilot.

Plaintiffs' claims as a matter of law.

## II.
### SUMMARY JUDGMENT EVIDENCE

Pilot incorporates and relies on the following summary judgment evidence in support of this Motion:

**Exhibit A:**  Deposition Excerpts of Aaron Tolerton;

**Exhibit B:**  DPD Officer History for Aaron Tolerton and Supporting Affidavit; and

**Exhibit C:**  Deposition Excerpts of Damon Luster.

Pilot further relies upon the pleadings filed in this action, including but not limited to Plaintiffs' Fourth Amended Complaint (Doc. No 41).

## III.
### STATEMENT OF UNDISPUTED FACTS

Pilot relies on the following undisputed facts in support of this Motion:

1. Tolerton began working as a police officer for the Dallas Police Department on January 7, 2009.  (*See* App. 007, Tolerton Deposition at 18:18-23).

2. Tolerton began working a security job at the Bonnie View Flying J around February 2011. (*See* App. 010, Tolerton deposition at 37:10-14).

3. Tolerton was a licensed DPD police officer providing security at the Bonnie View Flying J on the date of the Incident and was wearing his DPD uniform and badge. (*See* Plaintiffs' Fourth Amended Complaint, ¶ 24; App. 007, Tolerton deposition at 18:7-9).

4. Desmond Luster fired gunshots at two individuals near the Bonnie View Flying J shortly before the Incident. (*See* Plaintiffs' Fourth Amended Petition, ¶ 23; App. 018, Tolerton deposition at 136:11-14).

5. Tolerton responded to a DPD radio call relating to an active shooting incident outside the Flying J, and witnessed Desmond Luster firing his weapon. (*See* Plaintiffs' Fourth Amended Complaint, ¶ 24; App. 007, 014, 025, Tolerton deposition at 19:1-3, 106:6-13, 216:8-15).

6. After firing his gun at the two individuals, Luster drove his truck towards Tolerton, jumped the curb, and continued advancing on Tolerton.  (*See* Plaintiffs' Fourth

       Amended Complaint, ¶ 29; App. 020, 021, Tolerton deposition at 151:5-10, 155:23-25).

7.     Tolerton opened fire at Luster's vehicle. (*See* Plaintiffs' Fourth Amended Complaint, ¶ 30; App. 022, Tolerton deposition at 158:9-12).

8.     Tolerton was acting in the scope of his employment as agent, servant, and employee of the City of Dallas, specifically the DPD, within its executive branch and was performing a governmental function when the Altercation occurred. (*See* Plaintiffs' Fourth Amended Complaint, ¶ 16; App. 007, 008, Tolerton deposition at 18:7-9, 28:9-13).

## IV.
### SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has made an initial showing that it is entitled to judgment as a matter of law, the party opposing the motion must come forward with competent evidence demonstrating the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The court must grant summary judgment if the non-moving party fails to present sufficient evidence in its response. *See Celotex*, 477 U.S. at 322-23.

## V.
### ARGUMENT & AUTHORITIES

Pilot is entitled to summary judgment on all of Plaintiffs' claims against it because: (1) Tolerton was acting within his scope of work as a peace officer when the Incident occurred and therefore Pilot's conduct in hiring, training or supervising Tolerton was not a proximate cause of the Plaintiffs' injuries and damages; (2) even if Tolerton had not been acting as a DPD officer when the Incident occurred, the summary judgment evidence conclusively establishes that Tolerton's conduct in shooting Desmond and detaining Damon was not foreseeable to Pilot; (3)

8

Plaintiffs' claims for punitive/exemplary damages against Pilot, if any, fail as a matter of law because Plaintiffs' cannot prevail on their underlying negligence claims; and (4) Damon's claims against Pilot pursuant to the Texas Wrongful Death Act, if any, fail because only a decedent's parents, spouses and children are entitled to recover under the Act.

A. **Summary Judgment is Appropriate Because Pilot's Conduct in Hiring, Training or Supervising Tolerton Cannot, as a Matter of Law, Constitute a Proximate Cause of The Injuries and Damages Sustained by Plaintiffs**

As outlined above, Plaintiffs do not allege that Pilot is vicariously liable for Tolerton's actions through *respondeat superior* or any other theory of imputed liability. Rather, Plaintiffs' allege only that Pilot negligently hired, trained, and supervised Defendant Tolerton and failed to reasonably investigate alleged physical altercations involving Tolerton while working at the Bonnie View Road facility. These claims fail as a matter of law because was Tolerton acting as an on-duty police officer when the Incident occurred, and therefore Pilot's alleged negligence in hiring, training or supervising Tolerton cannot constitute a proximate cause of Plaintiffs' injuries and damages.

    1.    *Applicable Law: Negligent Hiring, Training and Supervision*

"Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.). The elements of a negligence action are duty, a breach of that duty, and damages proximately caused by the breach. *See id.*; *see also Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). An employer owes a duty to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employees are engaged in occupations that require skill or experience and that could be hazardous to the safety of others.

*See Morris*, 78 S.W.3d at 49. Therefore, an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *See id.* Negligence in hiring or retention requires that the employer's failure to investigate, screen, or supervise its employees proximately caused the injuries the plaintiff alleges. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006). An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. *See id.* To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries. *See Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433, 437 (Tex. App.—Amarillo 1996, writ denied). To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Morris*, 78 S.W.3d at 49.

    2.    *Ogg v. Dillard's, Inc. is Dispositive of Plaintiffs' Claims*

In *Ogg v. Dillards, Inc.*, the Dallas Court of Appeals considered whether Dillard's department store was liable to Ogg for assault, negligent hiring/retention and other claims arising from a physical confrontation between Ogg and Edmundo Lujan, a Dallas Police Officer. *See* 239 S.W.3d 409, 414 (Tex. App.—Dallas 2007, pet. denied). Dillard's utilized off-duty, uniformed officers to provide on-premises security for the store at a rate of $25 per hour. *See id.* Officer Lujan was summoned to locate Ogg and a companion, who were suspected of engaging in credit card abuse after returning a Coach wallet that had been purchased at another Dillard's location

under suspicious circumstances. *See id.* at 414-15. Ogg was still inside the Dillard's store when Officer Lujan and other officers located her. *See id.* at 415. Ogg was then questioned by the Dillard's sales manager on duty, and Officer Lujan requested that Ogg produce her identification. *See id.* According to Officer Lujan, Ogg pushed him with two hands and attempted to flee on foot, and Lujan then performed a standard takedown maneuver on Ogg and handcuffed her. *See id.*

Because Ogg alleged that Dillard's was vicariously responsible for Officer Lujan's conduct on her claims of assault, false imprisonment, intentional infliction of emotional distress and invasion of privacy, the Court engaged in a detailed review of the underlying facts to determine whether Officer Lujan was acting as an employee of Dillard's or in his official capacity as a police officer when the incident occurred. *See id.* at 418 (noting that, "if an officer was acting as an on-duty officer at the time the acts were committed, then *respondeat superior* will not extend liability to the employer."). After concluding that Officer Lujan was, in fact, acting as an on-duty peace officer when the altercation with Ogg occurred and that Dillard's was not vicariously responsible for Officer Lujan's conduct, the Court turned to Plaintiff's direct claims against Dillard's for negligent hiring and retention. *See id.* at 422.

The *Ogg* Court began its negligent hiring/retention analysis by noting that private employers may be held directly liable for negligently hiring or retaining an employee regardless of whether the employee's conduct occurred within the course and scope of his employment. *See id.* at 421. However, the Court further noted that a different rule applies when the employee of the private employer is a police officer and the allegedly negligent conduct of the officer occurred during the performance of his official duties. *See id.* "When an off-duty police officer employee has already become an on-duty officer when the injury occurred, **he is no longer an employee [of the private employer] for the purpose of a negligent retention claim.**" *See id.; Leake v. Half*

*Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 564 (Tex. App.—Dallas 1996, no writ) (holding that private employer's retention of Dallas Police Officer who shot decedent in store parking lot was not, as a matter of law, the proximate cause of the decedent's injury because he was acting as an on-duty police officer at the time of shooting). The Court therefore concluded that, because Officer Lujan was acting as a Dallas Police Officer during his altercation with Ogg, and not as an employee of Dillard's, Dillard's could not be liable to Ogg for negligently hiring or retaining Lujan as a matter of law. *See id.* at 422.

> 3. *Plaintiffs Have Judicially Admitted that Tolerton Was Acting as an On-Duty Officer When He Shot Desmond and Detained Damon*

Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987). As outlined above, in their Fourth Amended Petition Plaintiffs state ". . . at all times material hereto, Defendant Tolerton was acting in the scope of his employment as an agent, servant, and employee of the City of Dallas, specifically the DPD, within its executive branch and was performing a governmental function." (*See* Plaintiff's Fourth Amended Complaint ¶ 16). Plaintiffs further admit that "Defendant Aaron Tolerton and the other DPD Officers involved were acting under color of state law when they subjected Desmond Luster and his brother Damon Luster to the wrongs and injuries hereinafter set forth." (*See* Plaintiff's Fourth Amended Complaint ¶ 15). Because Plaintiffs have clearly and unequivocally admitted that Tolerton was acting as an on-duty Dallas Police Officer when the Incident occurred, Plaintiffs' negligent hiring, training and supervision claims against Pilot fail as a matter of law and summary judgment on those claims is appropriate. *See Ogg*, 239 S.W.3d at 422.

    4.    *Plaintiffs' Judicial Admissions of On-Duty Conduct Notwithstanding, the Summary Judgment Evidence Conclusively Establishes that Tolerton Was Acting as an On-Duty Officer When He Shot Desmond and Detained Damon*

In addition to Plaintiffs' judicial admissions of on-duty conduct, the summary judgment evidence conclusively establishes that Tolerton was acting as an on-duty Dallas Police Officer when the Incident occurred, and therefore Plaintiffs' negligent hiring, training and supervision claims against Pilot fail as a matter of law. *See id.* Police officers have a duty to prevent crime and arrest offenders. TEX. CODE CRIM. PROC. ANN. art. 2.13 (West 2015). An off-duty police officer who observes a crime immediately becomes an on-duty police officer. *See City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ); *Vernon v. City of Dallas*, 638 S.W.2d 5, 8-9 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Furthermore, an off-duty officer's public duty can also be triggered by "reasonable suspicion" that a person is, has been or soon will be engaged in criminal activity. *See Ogg*, 239 S.W.3d at 419 (noting that standard for reasonable suspicion is lower than that of probable cause); *Morgan v. City of Alvin*, 175 S.W.3d 408, 417 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The underlying facts of the Incident clearly establish that Tolerton had witnessed crimes being committed, or at a minimum had reasonable suspicion that crimes had been or were going to be committed, prior the shooting of Desmond and detention of Damon. First, Tolerton testified that, prior to firing his weapon, he witnessed Desmond Luster firing a gun at two individuals who were running southbound on Bonnie View Road away from Desmond's location and towards Tolerton. (*See* App. 016, 024, Tolerton Deposition, 136:11-14; 212:17-213:2). It is a crime under Texas law to discharge a firearm on or across a public road, and to recklessly discharge a firearm inside the corporate limits of a municipality having a population of 100,000 or more. *See* TEX. PENAL CODE ANN. Sec. 42.01, 42.12. Tolerton further testified that he contemporaneously

witnessed two individuals running away from Desmond, and that Desmond later drove his vehicle over the curb at a high rate of speed in Tolerton's direction. (*See* App. 016, 024, Tolerton Deposition, 213:18-24; 240:25-241:15). These actions, at a minimum, gave rise to reasonable suspicion that a crime had been, or was about to be, committed. *See Ogg*, 239 S.W.3d at 419. Therefore, because Tolerton had witnessed crimes being committed prior to shooting Desmond and detaining Damon, or at a minimum had reasonable suspicion that a crime had been or was going to be committed, the summary judgment evidence conclusively establishes that Tolerton was acting as an on-duty Dallas Police Officer at the time the Incident occurred. *See id.* Consequently, summary judgment is appropriate regarding Plaintiffs' claims against Pilot.

**B.    Even if Tolerton Had Not Been Performing His Public Duties at the Time the Incident Occurred, His Conduct in Shooting Desmond and Detaining Damon Was Not Foreseeable to Pilot as a Matter of Law**

To be found liable for negligent hiring, training or supervision, the employer's failure to investigate, screen, or supervise its employees must have proximately caused the injuries the plaintiffs allege. *Fifth Club*, 196 S.W.3d at 796. To fulfill proximate cause it must be shown that the employee's actions were foreseeable and that it was the cause in fact of the injury. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). In order to show cause in fact, the test is if the negligent "'act or omission was a substantial factor in bringing about injury,' without which the harm would not have occurred." *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission.*" Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995).

1.   *Nothing in Tolerton's Past Made His Conduct Foreseeable to Pilot*

An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. *See Fifth Club, Inc.*, 196 S.W.3d at 796. Prior to the Incident, Tolerton had only two sustained disciplinary actions on his DPD record—one for being absent from work in 2011 and one for improper operation of an emergency vehicle in 2013. (*See* App. 039, DPD Officer History). Therefore, there is nothing in Tolerton's official discipline record showing that he was unfit to provide security services or that would have caused a reasonable employer not to hire him for a security position. *See id.* ("Fifth Club hired West as a security guard to assist in protecting its property and patrons, a job specially suited to a trained police officer.").

2.   *Prior Altercations Involving Tolerton on Pilot's Premises Did Not Place Pilot on Notice that Retaining Tolerton Would Create a Risk of Harm to the Public*

In their Complaint, Plaintiffs allege that Pilot failed to investigate two prior incidents in which Tolerton used physical force while attempting to remove individuals from Pilot's premises. (*See* Plaintiffs' Fourth Amended Complaint, ¶ 46, 47). One of these incidents was investigated by DPD, but the complaint was not sustained. (*See* App. 039, DPD Officer History). Neither of these incidents involved Tolerton firing his weapon, and in fact Tolerton had never fired his weapon on the job prior to the Incident. (*See* App. 008, Tolerton Deposition at 28:17-22). Taking Plaintiffs' allegations as true, these two incidents did not, as a matter of law, place Pilot on notice that retaining Tolerton would present a risk of harm to the public. The incidents in question took place on Pilot's premises and arose from Tolerton providing security for Pilot's customers and property. The two individuals involved in those incidents were ultimately arrested and/or cited for their conduct on Pilot's premises. (*See* App. 032, Tolerton Deposition at 245:7-246:15; Plaintiff's Fourth Amended Complaint at Page 73 of attachments). These two incidents would not place a

15

reasonable employer on notice that Tolerton might someday respond to a reported active shooting incident originating outside of Pilot's premises and discharge his weapon in response to that threat. At most, Pilot's hiring and retention of Tolerton provided a condition that allowed the Incident to occur. *See id.* at 797 (noting that hiring of officer merely provided condition that allowed alleged assault to occur and was not a proximate cause of Plaintiffs injuries).

Because the shooting of Desmond and detention of Damon were not foreseeable to Pilot as a matter of law, Pilot's hiring, training and supervision of Tolerton could not be a proximate cause of Plaintiffs' injuries and damages and summary judgment on Plaintiffs' claims is appropriate.

### C. Pilot is Entitled to Summary Judgment on Plaintiffs' Claims for Punitive/Exemplary Damages

To the extent that Plaintiffs seek punitive/exemplary damages from Pilot based either upon Gross Negligence or Malice, summary judgment on any such claims is also appropriate. A finding of actual damages is a prerequisite to the imposition of punitive damages. *See Safeshred, Inc. v. Martinez*, 365 S.W.2d 655, 660 (Tex. 2012). Because Pilot is entitled to summary judgment on Plaintiffs' claims for actual damages as outlined above, summary judgment on Plaintiffs' claims for punitive damages is also appropriate. *See id.*

### D. Damon Luster is Not Entitled to Recover from Pilot for the Death of His Brother Desmond Luster Pursuant to the Texas Wrongful Death Act

Although Pilot is entitled to summary judgment on all claims asserted by Damon Luster as outlined above, out of an abundance of caution Pilot also moves for summary judgment on any/all claims Damon asserts against Pilot pursuant to the Texas Wrongful Death Act. *See* TEX. CIV. P. & REM. CODE ANN. § 71.004(b). Pursuant to the Act, only the deceased tort victim's surviving parents, children, and spouse are entitled to recovery. *See id.; Cunningham v. Haroona*, 382

S.W.3d 492, 507 (Tex. App.—Fort Worth 2012, pet. denied). Damon Luster is the brother of Desmond Luster. (*See* App. 048, Damon Luster Deposition, 10:15-18). Because Damon is not a recognized beneficiary under the Wrongful Death Act, Pilot is entitled to summary judgement on any such claims as a matter of law.

## VI.
## CONCLUSION & PRAYER

Pilot cannot be directly liable for Tolerton's alleged acts as a certified Texas peace officer. Even if Tolerton was not acting in his official capacity as a peace officer, the summary judgment evidence conclusively demonstrates that Tolerton's conduct was not foreseeable to Pilot, and that Pilot is entitled to summary judgment on all claims asserted by Plaintiffs. Accordingly, Pilot respectfully requests that the Court grant its Motion for Summary Judgment as to all claims asserted against Pilot by Plaintiffs Cassandra Luster, Individually and a/n/f of D'Andra Luster, a minor child, Damon Luster, Desmond Luster, Jr., Beverly Diana Luster, Individually and as Administrator of the Estate of Desmond Luster, Sr., and that all such claims be dismissed with prejudice. Pilot would further request that the Court award Pilot its costs, and such other and further relief to which Pilot is justly entitled.

Respectfully submitted,

/s/ Michael B. Jones
Michael B. Jones, Esq., Texas Bar No. 24002375
MJones@CanterburyLaw.Com
Logan R. Adcock, Esq., Texas Bar No. 24092016
LAdcock@CanterburyLaw.Com

CANTERBURY, GOOCH, SURRATT, SHAPIRO,
STEIN GASWIRTH & JONES, P.C.

4851 LBJ Freeway, Suite 301
Dallas, Texas 75244
(972) 239-7493 – Telephone
(972) 490-7739 – Facsimile

ATTORNEYS FOR DEFENDANT
PILOT TRAVEL CENTERS, LLC


## CERTIFICATE OF SERVICE

I certify that on the 11th day of December, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as a service of this document by electronic means. I further certify that I have served to the extent applicable all case participants not registered for electronic notice by another manner authorized by Federal Rule of Civil Procedure 5(b)(2):

| | |
|---|---|
| Charles A. Bennett, Esq.<br>Ted B. Lyon & Associates<br>18601 LBJ Freeway<br>Suite 525, Town East Tower<br>Mesquite, Texas 75150<br>(972) 279-3021 = Fax<br>CBennett@TedLyon.Com<br><br>And<br><br>Don N. High, Esq.<br>816 Greylyn Drive<br>Plano, Texas 75075<br>DonNHigh@Verizon.Net<br>***Counsel for Plaintiffs*** | Jason G. Schuette, Esq.<br>Tatia R. Wilson, Esq.<br>Stefani R. Williams, Esq.<br>Dallas City Attorney's Office<br>1500 Marilla Street, Room 7B North<br>Dallas, Texas 75201<br>(214) 670-0622 = Fax<br>Jason.Schuette@DallasCityHall.Com<br>Tatia.Wilson@DallasCityHall.Com<br>Stefani.Williams@DallasCityHall.Com<br>***Counsel for Defendants, City of Dallas and Aaron Tolerton*** |

/s/ Michael B. Jones
Michael B. Jones