UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASSANDRA LUSTER, INDIVIDUALLY and A/N/F OF _____ A MINOR CHILD, DAMON LUSTER, DESMOND LUSTER JR.; and BEVERLY LUSTER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DESMOND LUSTER, SR., Plaintiffs, v. THE CITY OF DALLAS, ET AL., Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:16-CV-0396-B |

# THE DEFENDANTS CITY OF DALLAS AND AARON TOLERTON'S BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
City Attorney

Jason G. Schuette
Senior Assistant City Attorney
Texas State Bar No. 17827020
jason.schuette@dallascityhall.com

Tatia R. Wilson
Senior Assistant City Attorney
Texas State Bar No. 00795793
tatia.wilson@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas  75201
Telephone:     214-670-3519
Facsimile:      214-670-0622

ATTORNEYS FOR THE DEFENDANTS
CITY OF DALLAS, TEXAS AND AARON TOLERTON

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

I.      SUMMARY OF THE MOTION ..................................................................................1

II.     SUMMARY JUDGMENT EVIDENCE ......................................................................2

        A.      Documentary Evidence ....................................................................................2

        B.      Factual Background ..........................................................................................3

III.    ARGUMENT AND AUTHORITIES ..........................................................................8

        A.      Applicable Legal Standards ............................................................................8

                1.      Motions for summary judgment ..........................................................8

                2.      The qualified immunity defense alters the summary judgment
                        burden of proof. ...................................................................................9

        B.      The Fourth Amendment Does Not Guarantee a Generalized Right to
                "Due Process" or to "Equal Protection" of the Law. ................................12

        C.      Analysis of the Plaintiffs' Unlawful Detention and Unlawful Arrest
                Claims (Fourth Amendment) .......................................................................13

                1.      An officer may detain a suspect if there is reasonable suspicion
                        of criminal activity. ..........................................................................14

                2.      Officer Tolerton had reasonable suspicion to detain Desmond,
                        and the Defendants are entitled to summary judgment. ...................15

                3.      An officer may arrest a suspect if there is probable cause to
                        believe that the suspect committed an offense. ................................17

                4.      Officer Tolerton had probable cause to arrest Desmond, and the
                        Defendants are entitled to summary judgment. ................................18

                5.      DaMon was not subjected to an unlawful detention, and the
                        force used to detain DaMon was objectively reasonable and
                        lawful. ................................................................................................19

                6.      DaMon was not subjected to an unlawful arrest, because there
                        was probable cause to arrest DaMon for unlawfully carrying a
                        pistol. .................................................................................................23

        D.      The Defendants Are Entitled to Summary Judgment as to the
                Plaintiffs' Fourteenth Amendment Equal Protection Claims. ..................25

1.      The Plaintiffs fail to plead viable equal protection claims. .......................26

2.      Plaintiffs lack evidence to raise a genuine issue of material fact
        as to any equal protection claim against the Defendants. ..........................28

E.      The City Is Entitled to Dismissal of the Plaintiffs' State Law Claims
        Against Officer Tolerton. ..........................................................................................31

1.      The Texas Tort Claims Act and the Texas Election of
        Remedies Statute..........................................................................................31

2.      Section 101.106(e) applies to the Plaintiffs' Texas common
        law and statutory claims against Officer Tolerton. ....................................34

F.      The City Also is Entitled to Dismissal of the Plaintiffs' State Law
        Claims Against the City. ............................................................................................35

IV.     CONCLUSION..............................................................................................................36

CERTIFICATE OF SERVICE .......................................................................................................39

# TABLE OF AUTHORITIES

**Cases**

*Abdeljalil ex. rel. Walker v. City of Fort Worth*,
    234 F.3d 28 (5th Cir. 2000) ........................................................................ 35

*Abdeljalil v. City of Fort Worth*,
    55 F. Supp. 2d 614 (N.D. Tex. 1999) ........................................................ 35

*Anderson v. Creighton*,
    483 U.S. 635 (1987)............................................................................ 11, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................. 8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................. 28

*Babb v. Dorman*,
    33 F.3d 472 (5th Cir. 1994) ..................................................................... 12

*Bazan ex rel. Bazan v. Hidalgo County*,
    246 F.3d 481 (5th Cir. 2001) ................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................. 28

*Blair v. City of Dallas*,
    No. 3:14cv1515-P, 2016 WL 7735758 (N.D. Tex. Feb. 17, 2016) ...................... 35

*Brown v. Callahan*,
    623 F.3d 249 (5th Cir. 2010) ................................................................... 10

*Brown v. Ke-Ping Xie*,
    260 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ......................... 34

*Brown v. Lyford*,
    243 F.3d 185 (5th Cir. 2001) ........................................................ 17, 19, 31

*Brown v. Texas*,
    443 U.S. 47 (1979)................................................................................... 14

*Brumfield v. Hollins*,
    551 F.3d 322 (5th Cir. 2008) ................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................. 8, 9

*City of Antonio v. Dunn*,
    796 S.W.2d 258 (Tex. App.—San Antonio 1990, writ denied)............................................ 35

*City of Arlington v. Randall*,
    301 S.W.3d 896 (Tex. App.—Fort Worth 2009, pet. denied) ......................................... 32, 33

*City of LaPorte v. Barfield*,
    898 S.W.2d 288 (Tex. 1995)............................................................................................ 35

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)..................................................................................... 16, 19, 23, 31

*City of Waco v. Williams*,
    209 S.W.3d 216 (Tex. App.—Waco 2006) ........................................................................ 36

*Devenpeck v. Alford*,
    543 U.S. 146 (2004)...................................................................................................... 18

*Duckett v. City of Cedar Park*,
    950 F.2d 272 (5th Cir. 1992) .......................................................................................... 8

*Eason v. Thaler*,
    73 F3d 1322 (5th Cir. 1996) ........................................................................................... 9

*Evans v. Ball*,
    168 F.3d 856 (5th Cir. 1999) ......................................................................................... 11

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) .......................................................................................... 9

*Foster v. City of Lake Jackson*,
    28 F.3d 425 (5th Cir. 1994). ......................................................................................... 11

*Gassner v. City of Garland*,
    864 F.2d 394 (5th Cir. 1989) ........................................................................................ 10

*Gerstein v. Pugh*,
    420 U.S. 103 (1975)...................................................................................................... 13

*Gibson v. Rich*,
    44 F.3d 274 (5th Cir. 1995) .......................................................................................... 12

*Gonzales v. City of Corpus Christi*,
    No. C.A. C-05-2802005, 2005 WL 3058168 (S.D. Tex. Nov. 9, 2005)............................... 36

*Gonzalez v. City Plan Comm'n*,
    No. 3:05cv1737-M, 2006 U.S. Dist. LEXIS 4415 (N.D. Tex. Feb. 3, 2006) ...................... 27

*Graham v. Conner,*
    490 U.S. 386 (1989) ................................................................................... 12, 13

*Guerrero v. City of El Paso,*
    No. EP-11cv101-KC, 2011 WL 3880946 (W.D. Tex. Sept. 1, 2011) .................................... 34

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ........................................................................................ 10

*Harris County v. Cabazos,*
    177 S.W.3d 105 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ........................................... 36

*Holland v. City of Houston,*
    41 F. Supp. 678 (S.D. Tex. 1999) ........................................................................ 36

*Hunter v. Bryant,*
    502 U.S. 224 (1991) ........................................................................................ 17

*Huong v. City of Port Arthur,*
    961 F. Supp. 1003 (E.D. Tex.1997) ...................................................................... 36

*Johnson v. Rodriguez,*
    110 F.3d 299, 306 (5th Cir. 1997) ....................................................................... 27

*Kelley v. City of Dallas,*
    No. 3:17cv1015-B-BK, 2017 WL 3891680 (N.D. Tex. Aug. 17, 2017) .............................. 34

*Kerr v. Lyford,*
    171 F.3d 330 (5th Cir. 1999) ............................................................................. 10

*Lynch Props. v. Potomac Ins. Co.,*
    140 F.3d 622 (5th Cir. 1998) ............................................................................... 9

*Mabry v. Lee County,*
    168 F. Supp. 3d 940 (N.D. Miss. 2016) .................................................................. 13

*Malley v. Briggs,*
    475 U.S. 335 (1986) ........................................................................................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986) ......................................................................................... 9

*Michigan v. DeFillippo,*
    443 U.S. 31 (1979) ......................................................................................... 17

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
    253 S.W.3d 653 (Tex. 2008) ......................................................................... 32, 33

*Neal v. City of Hempstead*,
   No. 4:12cv1733, 2014 WL 3907770 (S.D. Tex. Aug. 11, 2014)........................................ 34

*Newman v. Obersteller*,
   960 S.W.2d 621 (Tex. 1997)........................................................................................ 33

*Novitsky v. City of Aurora*,
   491 F.3d 1244 (10th Cir. 2007) ................................................................................... 20

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*,
   577 F.3d 415 (2d Cir. 2009)......................................................................................... 26

*Pearson v. Callahan*,
   555 U.S. 223 (2009)......................................................................................... 10, 11, 16

*Pennsylvania v. Mimms*,
   434 U.S. 106 (1977)..................................................................................................... 20

*Personnel Adm'r. v. Feeney*,
   442, U.S. 256 (1979).............................................................................................. 27, 28

*Piazza v. Mayne*,
   217 F.3d 239 (5th Cir. 2000) ....................................................................................... 17

*Pierce v. Smith*,
   117 F.3d 866 (5th Cir. 1997) ............................................................................. 10, 11, 23

*Ricketts v. City of Columbia*,
   36 F.3d 775 (8th Cir. 1994) ......................................................................................... 27

*Samaad v. City of Dallas*,
   940 F.2d 925 (5th Cir. 1991) ................................................................................. 26, 27

*Saucier v. Katz*,
   533 U.S. 194 (2001)..................................................................................................... 10

*Scroggins v. GEO Group, Inc.*,
   No. 2:12cv1752, 2015 WL 1637183 (W.D. La. Apr. 10, 2015)..................................... 27

*Siegert v. Gilley*,
   500 U.S. 226 (1991)..................................................................................................... 10

*Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*,
   257 S.W.3d 379 (Tex. App.—Fort Worth 2008, no pet.).............................................. 33

*Thompson v. City of Lawrence*,
   58 F.3d 1511 (10th Cir. 1995) ..................................................................................... 21

*Topalian v. Ehrman*,
   954 F.2d 1125 (5th Cir. 1992) ........................................................... 8, 9

*United States v. Arvizu*,
   534 U.S. 266 (2002) ............................................................................. 14

*United States v. Cortez*,
   449 U.S. 411 (1981) ............................................................................. 14

*United States v. Cronn*,
   717 F.2d 164 (5th Cir.1983) ............................................................... 26

*United States v. Garcia*,
   179 F.3d 265 (5th Cir. 1999) ......................................................... 17, 18

*United States v. Hardnett*,
   804 F.2d 353 (6th Cir. 1986) ............................................................. 20

*United States v. Hensley*,
   469 U.S. 221 (1985) ............................................................................. 20

*United States v. Lanier*,
   520 U.S. 259 (1997) ............................................................................. 13

*United States v. Michelletti*,
   13 F.3d 838 (5th Cir.) (en banc) ........................................................ 14

*United States v. Neufeld-Neufeld*,
   338 F.3d 374 (5th Cir. 2003) ............................................................. 15

*United States v. Sokolow*,
   490 U.S. 1 (1989) ................................................................................. 14

*United States v. Taylor*,
   716 F.2d 701 (9th Cir. 1983) ............................................................. 20

*United States v. Tolbert*,
   No. 1:14cr102-TCB, 2015 WL 3505147 (N.D. Ga. June 1, 2015) ................. 16, 18

*United States v. Watson*,
   273 F.3d 599 (5th Cir. 2001) ............................................................. 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................. 27

*Villasan v. O'Rourke*,
   166 S.W.3d 752 (Tex. App.—Beaumont 2005, pet. denied) ......................... 34

*Wilson v. Brestrup,*
   No. 3:05cv719-M, 2006 WL 929284 (N.D. Tex. Apr. 10, 2006).......................................... 27

**Statutes**

Tex. Civ. Prac. & Rem. Code § 101.021 ..................................................................... 35

Tex. Civ. Prac. & Rem. Code § 101.057 ..................................................................... 35

Tex. Civ. Prac. & Rem. Code § 101.057(2) ................................................................. 35

Tex. Civ. Prac. & Rem. Code § 101.106 ..................................................................... 32

Tex. Civ. Prac. & Rem. Code § 101.106(e) ................................................... 31, 32, 33, 34

Tex. Civ. Prac. & Rem. Code § 71.001 ....................................................................... 31

Tex. Civ. Prac. & Rem. Code § 72.021 ....................................................................... 31

Tex. Civ. Prac. & Rem. Code, ch. 101 ........................................................................ 31

Tex. Pen. Code § 15.01 ........................................................................................... 15

Tex. Pen. Code § 19.01 ........................................................................................... 15

Tex. Pen. Code § 19.02 ........................................................................................... 15

Tex. Pen. Code § 22.05 ........................................................................................... 15

Tex. Pen. Code § 42.12 ........................................................................................... 15

Tex. Pen. Code § 46.02 ........................................................................................... 15

**Rules**

Fed. R. Civ. P. 56(b) .................................................................................................. 1

Fed. R. Civ. P. 56(c) .................................................................................................. 8

Fed. R. Civ. P. 56(e) .................................................................................................. 8

N.D. Tex. Local Civ. R. 56.5 ....................................................................................... 1

N.D. Tex. Local Civ. R. 7.2 ......................................................................................... 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CASSANDRA LUSTER,        §
INDIVIDUALLY and A/N/F OF    §
_____ A MINOR CHILD,   §
DAMON LUSTER, DESMOND LUSTER   §       CIVIL ACTION NO.
JR.; and BEVERLY LUSTER,       §
INDIVIDUALLY AND AS         §
ADMINISTRATOR OF THE ESTATE    §       3:16-CV-0396-B
OF DESMOND LUSTER, SR.,      §
           Plaintiffs,         §
                     §
v.                           §
                     §
THE CITY OF DALLAS, ET AL.,     §
           Defendants.       §

**THE DEFENDANTS CITY OF DALLAS AND AARON TOLERTON'S
BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

      The Defendants City of Dallas ("the City") and Aaron Tolerton ("Officer Tolerton") (the "Defendants"), pursuant to Fed. R. Civ. P. 56(b), N.D. Tex. Local Civ. R. 7.2 and 56.5, file their brief in support of The Defendants City of Dallas and Aaron Tolerton's Motion for Partial Summary Judgment. The Defendants City of Dallas and Aaron Tolerton's Appendix in Support of Their Motion for Partial Summary Judgment ("App'x") is filed separately.

## I.      SUMMARY OF THE MOTION

      The Defendants seek summary judgment as to the following claims:

      1.      unlawful detention of Desmond Luster and DaMon Luster;

      2.      unlawful seizure of Desmond Luster;

      3.      unlawful arrest of DaMon Luster;

      4.      excessive force against DaMon Luster;

      5.      denial of due process of law to Desmond Luster;

6.    denial of equal protection to Desmond Luster and DaMon Luster;

7.    the Plaintiffs' state law claims against Officer Tolerton; and

8.    the Plaintiffs' state law claims against the City.

Additionally, Officer Tolerton asserts entitlement to qualified immunity as to all of the foregoing

claims based upon alleged deprivations of constitutional rights.

The Defendants do not seek summary judgment as to the Plaintiffs' claims that Officer

Tolerton used excessive force against Desmond Luster, and the associated claim that the City is

liable under 42 U.S.C. § 1983 for Officer Tolerton's alleged use of excessive force.

## II.    SUMMARY JUDGMENT EVIDENCE

### A.    Documentary Evidence

In addition to the pleadings and papers already filed, the Defendants rely on the following

evidence in support of this motion:

1.    Affidavit In Any Fact by Officer Aaron Tolerton ("Tolerton Aff.");

2.    Affidavit In Any Fact by Officer Cathy Blanchard ("Blanchard Aff.");

3.    Affidavit In Any Fact by Officer Larry Moody ("Moody Aff.");

4.    Affidavit In Any Fact by Officer John Rogers ("Rogers Aff.");

5.    Incident Report dated 2/9/2015 by DPD Crime Scene Response Section analyst Seth Rosenberg ("Rosenberg Rpt.");

6.    Recording of DPD Channel 7 radio traffic ("Channel 7 Audio"); and

7.    Eight (8) photographs of the scene of the shooting and of the Plaintiffs' vehicles.

8.    Oral and Videotaped Deposition of DaMon Luster ("DaMon Depos.");

9.    Video of DaMon Luster interview by the Dallas Police Department Crimes Against Persons / Special Investigations Unit detectives ("DaMon Video");

10.    Oral and Videotaped Deposition of Beverly Diana Luster-Brown ("Beverly Depos."); and

11.    Oral and Videotaped Deposition of Craig Rigtrup ("Rigtrup Depos.").

B.     **Factual Background**

The following undisputed facts are taken from judicial admissions made in the Plaintiffs' live Complaint, and from the evidence listed in subsection II-A, above:

On the evening of 6 February 2015, three juveniles burglarized Desmond ("Desmond"), Cassandra ("Cassandra"), and Desmond Luster, Jr.'s home, in southern Dallas.  (Complaint at 5-6 ¶ 17.)  The same three juveniles burglarized the Lusters' home again, three days later, on 9 February.  (*Id.* at 6 ¶ 18.)  The Lusters' home had a monitored security system.  (*Id.*)  At around noon, Desmond and his brother, DaMon, were having lunch at the home of their mother, Beverly Diana Luster-Brown.  (DaMon Depos. at 13-15 (App'x at 33-35).)  DaMon received a cell phone call from the alarm company, informing Desmond that his home had just been burglarized again.  (*Id.*)  Desmond and DaMon promptly drove to Desmond's home in their separate pickup trucks, DaMon departing a few minutes after Desmond.  (Complaint at 6 ¶ 18; DaMon Depos. at 15-16 (App'x at 35-36).)  DaMon described Desmond as "upset and disgusted."  (DaMon Depos. at 14 (App'x at 34).)  Beverly described Desmond's attitude as a combination of shocked, angered, surprised, and "frustrated."  (Beverly Depos. at 52-53 (App'x at 90-91).)  Beverly called 9-1-1 to report the burglary.  (Complaint at 6 ¶ 19; Beverly Depos. at 63-64 (App'x at 95-96).)

Desmond was armed with a .40 caliber semiautomatic pistol, which DaMon saw in his brother's hand.  (Complaint at 6 ¶ 23; DaMon Depos. at 29-30 (App'x at 49-50).)  DaMon also was armed with a .40 caliber semiautomatic pistol, which he had with him when he left from his mother's home, later while he was searching for the burglars in a wooded area that adjoins the Luster residence, and finally when he was seized at the scene where his brother had been shot.  (DaMon Depos. at 19-23 (App'x at 39-43).)  Desmond actually had three (3) handguns: a .40 caliber semiautomatic, a .22 or .25 caliber semiautomatic, and another .22 or .25 caliber semi-automatic that belonged to his mother, Beverly Diana Luster-Brown.  (*Id.* at 38 (App'x at 58).)

Desmond arrived at his residence about 15 minutes after Desmond received the call from his alarm service.  (Complaint at 6 ¶ 20.)  DaMon arrived shortly thereafter.  (DaMon Depos. at 25 (App'x at 45).)  Desmond and DaMon saw several items of personal property that had been taken from the house and that had been strewn about the backyard and in the wooded area near the house.  (*Id.* at 25-27 (App'x at 45-47).)  Desmond and DaMon searched those woods for the burglars.  (*Id.* at 29-30 (App'x at 49-50).)  Desmond fired his pistol in the direction of the suspected burglars while searching in the woods; Beverly Luster heard those gunshots while talking with her son Desmond on their cellular phones.  (Beverly Depos. at 58-59 (App'x at 93-94).)  .40 caliber cartridge casings were found in the woods.  (Rosenberg Rpt. at 1[1] (App'x at 7).)

Desmond decided to search for the burglars by driving through nearby streets in his truck, ultimately heading toward the 6600 block of Bonnie View Road.  (Complaint at 6 ¶ 21; DaMon Depos. at 31-33 (App'x at 51-53).)  DaMon initially remained behind with Desmond's spouse, Cassandra, to wait for Dallas Police Department ("DPD") patrol officers to arrive in response to the 9-1-1 calls reporting the burglary.  (DaMon Depos. at 33-34 (App'x at 53-54).)  But DaMon soon received another call from Desmond, during which Desmond told DaMon that he could see the suspected burglars running out of the wooded area, toward a gym and baseball diamond near Shadow Creek Blvd.  (*Id.* at 34 (App'x at 54).)  DaMon got into his truck and drove quickly to the area where he believed that his brother was with the suspected burglars.  (*Id.* at 34-35 (App'x at 54-55).)

Unbeknownst to DaMon, Desmond stopped briefly near a church located at the corner of Bonnie View Road and Riverside Road, got out of his truck, and fired three (3) rounds from his

---

[1] Rosenberg's report recites that seven (7) fired .40 caliber pistol cartridge casings were found in the mowed area near the southeast corner of a knocked-down fence behind the Luster residence at 6756 Shadow Creek Boulevard, identified in the report as "1st Location – 6756 Shadow Creek."  Desmond's pistol was a Springfield Arms semi-automatic pistol chambered in .40 caliber.  (Rosenberg Rpt. at 1 (App'x at 7).)

.40 caliber pistol at one or more of the suspected burglars.  (Complaint at 6 ¶ 23; Rosenberg Rpt. at 2 (App'x at 8); Tolerton Aff. at 1 (App'x at 1).)

Meanwhile, DPD Officer Aaron Tolerton was working at an off-duty security job at the Flying J truck stop, located in the 7400 block of Bonnie View Road.  (Complaint at 6-7 ¶¶ 23-24; Tolerton Aff. at 1 (App'x at 1).)  Officer Tolerton was attired in his full DPD uniform, and was readily identifiable as a DPD officer.  (Tolerton Aff. at 1 (App'x at 1).)  Shortly after conversing with a truck driver on the Flying J property who had a flat tire, Officer Tolerton heard a series of loud popping sounds.  (*Id.*)  A maintenance employee known to Officer Tolerton, John Blue, asked Tolerton over a Flying J radio if Tolerton heard the popping sounds; which Blue insisted were gunshots.  (*Id.*)  Officer Tolerton then went back to the truck driver, who told Tolerton that he had just heard just gunshots, and pointed toward the North.  (*Id.*)

At about the same time, Officer Tolerton heard over his DPD radio a DPD dispatcher announce an armed encounter nearby at Bonnie View Road and Tioga Street, and a report that a man in a dark blue pickup truck was firing a gun at two (2) unknown males.  (Tolerton Aff. at 1 (App'x at 1); Channel 7 Audio (App'x at 12 time 02:20).)  Officer Tolerton went to the eastern edge of the Flying J property toward Bonnie View Road.  (Tolerton Aff. at 1 (App'x at 1).)  Then another person pointed to the North and told Tolerton that a man was shooting at someone.  (*Id.*)

Once Officer Tolerton got to the eastern edge of the Flying J property, he saw an African-American man, later identified as Desmond Luster, standing on the passenger side of his dark blue pickup truck, shooting at two (2) juveniles as they were running away.  (*Id.*)  One of the two juveniles ran across Bonnie View Road toward Officer Tolerton, while the other ran southbound toward a truck wash.  (*Id.*)  Officer Tolerton seized the juvenile who was running toward him by ordering the juvenile to the ground.  (Complaint at 7 ¶ 25; Tolerton Aff. at 1 (App'x at 1).)

Officer Tolerton then saw Desmond get back into his pickup truck, turn around on Bonnie View Road, and drive at high speed directly toward Tolerton and his juvenile detainee.  (Tolerton Aff. at 1 (App'x at 1).)  Desmond's truck jumped the curb, and Officer Tolerton yelled at the juvenile detainee to run away.  (*Id.*)  Officer Tolerton also yelled for Desmond to "STOP!", but Desmond continued to drive toward Tolerton and his detainee.  (*Id.*)  Officer Tolerton perceived that Desmond intended to run both Tolerton and his detainee down.  (*Id.*)  Officer Tolerton fired his service pistol at Desmond's truck, and continued to fire as he saw Desmond appear to reach for something in the floorboard area of the truck.  (*Id.*)  Some of Officer Tolerton's shots struck Desmond, resulting in Desmond's death.

Desmond's truck crashed into a chain link fence on or near the Flying J's property and came to a stop in the fencing.  (Complaint at 7 ¶ 29; Tolerton Aff. at 1 (App'x at 1).)  Officer Tolerton approached the truck and ordered Desmond to show Tolerton his hands.  (Tolerton Aff. at 1 (App'x at 1).)  Desmond complied, and Officer Tolerton extracted Desmond from the truck and placed him on the ground.  (*Id.*)  Desmond was yelling at Officer Tolerton about allowing the burglars to escape, and Tolerton was asking where Desmond's gun was located.  (*Id.*)

DaMon was speaking on the phone with Desmond while Officer Tolerton was shooting at Desmond. (DaMon Depos. at 35 (App'x at 55).)  DaMon was driving as fast as he could to get to Desmond.  (*Id.* at 39 (App'x at 59).)  *DaMon did not see Officer Tolerton shoot Desmond.*  (*Id.* at 40 (App'x at 60).)  DaMon arrived at the scene while Tolerton was handcuffing Desmond.  (*Id.*)  DaMon's truck also headed toward Officer Tolerton, and it also went over the curb.  (Tolerton Aff. at 1 (App'x at 1); Damon Depos. at 44-45 (App'x at 64-65).)  DaMon quickly got out of his pickup truck and yelled at Officer Tolerton about allowing the juveniles to escape.  (Tolerton Aff. at 1 (App'x at 1); DaMon Depos. at 41-42, 47 (App'x at 61-62, 67).)  Officer Tolerton then

ordered DaMon at gunpoint to show his hands, and to get on the ground. (Tolerton Aff. at 1 (App'x at 1); DaMon Depos. at 41-42 (App'x at 60-61).) DaMon did not comply immediately, but DaMon eventually complied at Desmond's urging. (DaMon Depos. 42-43, 47 (App'x at 62-63, 67).)

DPD officers Larry Moody, Cathy Blanchard, and John Rogers were among the first of the backup officers to arrive at the shooting scene. (Blanchard Aff. at 1 (App'x at 3); Moody Aff. at 1 (App'x at 5).) Sr. Cpl. Blanchard handcuffed DaMon at Officer Tolerton's request, and later placed him in her patrol car. (Blanchard Aff. at 1 (App'x at 3).) DaMon told Officer Rogers that there was a weapon in his truck. (Rogers Aff. at 1 (App'x at 6).) Officer Rogers looked through the windshield and saw DaMon's .40 caliber semiautomatic pistol resting on the center console/armrest to the right of the driver's seat. (*Id.*) Officer Rogers removed the pistol's maga-zine, cleared and slide-locked the pistol, and replaced the pistol and magazine back onto the arm-rest. (*Id.*) Photographs documented where DaMon's pistol was initially located on the center console/armrest of DaMon's truck, and DaMon confirmed in his deposition testimony that his pistol was in plain sight, as shown in the photos. (DaMon Depos. at 16, 20-21, 48-51 (App'x at 35, 40-41, 68-71); photos (App'x at 18-20).)

DaMon was transported to DPD headquarters to be interviewed. DaMon waived his right to assistance of legal counsel and agreed to answer questions to be posed by DPD Detective John Duggan. (DaMon Video (App'x at 85).) DaMon stated that (1) he had in his possession a .40 caliber pistol in his truck that he was operating; and (2) he did not have a Texas license to allow him to carry a concealed firearm. (*Id.*) Detective Duggan initially told DaMon that he would be charged with unlawful possession of a firearm, a Texas misdemeanor offense. (*Id.*) However, DaMon was informed shortly afterward that he would not be charged with that offense. (*Id.*)

DaMon was released and driven to Desmond's residence.  (Beverly Depos. at 81-84 (App'x at 97-100).)

### III.    ARGUMENT AND AUTHORITIES

**A.    Applicable Legal Standards**

**1.    Motions for summary judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The moving party, however, need not support his motion with affidavits or other evidence negating the elements of the nonmovant's claim.  *Id.*   Once the moving party has satisfied this initial burden, the burden then shifts to the nonmoving party to show that summary judgment is not proper.  *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).  To withstand a motion for summary judgment, the nonmovant must present evidence sufficient to establish the existence of a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-23; *Liberty Lobby*, 477 U.S. at 256-57.  In other words, the nonmovant must set forth specific facts supported by competent summary judgment evidence that would establish each of the challenged elements of its case for which it will bear the burden of proof at

trial.  *Topalian*, 954 F.2d at 1131.  The nonmovant cannot rest upon mere conclusory allegations or denials of the adverse party's pleadings, but must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

While the Court must construe all evidence and justifiable inferences drawn from the record in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986), it need not consider conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation when ruling on a summary judgment motion.  *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth*, 19 F.3d at 1533.  The court moreover should not assume in the absence of sufficient proof that the nonmovant could or would prove the necessary facts.  *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Liberty Lobby*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" should not be considered by the court.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## 2.    The qualified immunity defense alters the summary judgment burden of proof.

Officer Tolerton has affirmatively pleaded the defense of qualified immunity with respect to the incident at issue, which resulted in the death of Desmond Luster.  (*See* The Defendant Aaron Tolerton's Answer to the Plaintiffs' Fourth Amended Complaint, Defenses, and Counter-claim) (ECF No. 45) ("Tolerton Answer") at 21-25 ¶¶ 2.7–2.11).  Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields

them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Police officers are specifically entitled to assert this qualified immunity defense.  *Gassner v. City of Garland*, 864 F.2d 394 (5th Cir. 1989).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  While the defendant must initially plead the defense, "[o]nce the defendant has done so the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).  "We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997).  Thus, because Officer Tolerton raised the defense of qualified immunity in his answer in and this motion, the burden lies with the Plaintiffs, even on summary judgment.  *See Brumfield*, 551 F.3d at 326.

In assessing whether a public official is entitled to qualified immunity, the Fifth Circuit conducts the two-prong analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 234-36 (2009).[2]  The first prong of the *Saucier* analysis requires the court to decide whether, taken in the light most favorable to the plaintiff, the facts show that the officer's conduct violated a constitutional right.  *See also Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999) (holding that the threshold inquiry is whether a constitutional claim

---

[2] The Supreme Court clarified in *Pearson* that the ordered two-prong protocol established in *Saucier v. Katz*, while often appropriate, is no longer mandatory for resolving qualified immunity claims. *Pearson*, 555 U.S. at 236. Therefore, this Court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in this particular case. *Id.* Accordingly, the Court may go directly to whether the Officer Tolerton's objectively reasonable actions constituted a deprivation of either Desmond's or DaMon's constitutional rights without first addressing whether those rights were clearly established.

has been alleged).  The second prong of the test requires the district court to make two separate inquiries:  whether the right allegedly violated was clearly established at the time of the event giving rise to the plaintiff's claim, and if so, whether the defendant's conduct was objectively unreasonable.  *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999).

In *Pearson*, the Supreme Court held that district courts need not first resolve whether the constitutional right in issue was clearly established prior to resolving whether the government official's actions were objectively reasonable.  *Pearson*, 555 U.S. at 236.  Rather, this Court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in this particular case.  *Id.*

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.  *Creighton*, 483 U.S. at 640; *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997). (holding that to overcome qualified immunity, pre-existing law must truly compel the conclusion that what the defendant is doing violates federal law in the circumstances).

In *Anderson v. Creighton*, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him.  *Creighton*, 483 U.S. at 641.  If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized."  *Malley*

*v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing*

*Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).   Qualified immunity is designed to protect

from civil liability "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. at 341.

**B.     The Fourth Amendment Does Not Guarantee a Generalized Right to "Due Process" or to "Equal Protection" of the Law.**

In Complaint paragraph 107, the Plaintiffs allege that Officer Tolerton "denied Desmond

Luster of his right to be free from deprivation of his rights without due process of law, in viola-

tion of the Fourth Amendment," and that the City also is liable for that deprivation under § 1983

because Tolerton was acting pursuant to the City's official policies on the use of deadly force:

> Plaintiffs would show that Defendant Tolerton denied Desmond Luster his right to be free from deprivation of his rights without due process of law, in violation of the Fourth Amendment to the United States Constitution. Plaintiffs would show that Defendant Tolerton was acting within the custom, policy, practice and/or procedure of the DPD in regards to the use of deadly force as authorized and/or ratified by the Dallas City Council and Chief Brown at the time of the incident.

(Complaint at 29 ¶ 107).

The Fourth Amendment does not provide a generalized right to due process of law.  That

right is provided by the Fourteenth Amendment.  Simply put, the Plaintiffs have not asserted any

factual basis for a cognizable due process violation.  In *Graham v. Conner*, 490 U.S. 386 (1989),

the Supreme Court held that "*all* claims" against law enforcement officers for "excessive force-

deadly or not in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen"

should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than

under a "substantive due process" approach.  *Id*. at 395 ("Because the Fourth Amendment pro-

vides an explicit textual source of constitutional protection against this sort of physically-intru-

sive governmental conduct, that Amendment, not the more generalized notion of 'substantive

due process,' must be the guide for analyzing these claims.").  In other words, "Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.  *United States v. Lanier*, 520 U.S. 259, 272 n7 (1997) (citing *Graham*, 490 U.S. at 394); *see also Mabry v. Lee County*, 168 F. Supp. 3d 940, 943-44 (N.D. Miss. 2016) ("Unlike the typical due process analysis, in Fourth Amendment seizure cases, the boundaries of the 'process that is due' are defined by Fourth Amendment principles, which are 'tailored exclusively for the criminal justice system.'") (quoting *Gerstein v. Pugh*, 420 U.S. 103, 124 n.27 (1975)).

Here, the Plaintiffs' oddly do not make the usual error of asserting a due process claim arising under the Fourteenth Amendment.  Instead, the Plaintiffs assert a Fourth Amendment "due process" claim, a creature that does not exist in our jurisprudence.  It is unclear whether the Plaintiffs intend to assert a freestanding Fourth Amendment due process claim, or are instead acknowledging that Fourth Amendment principles apply to the analysis of the Plaintiffs various seizure and use-of-force claims.  If the former, the claim is not cognizable, and the Court should dismiss it.  If the latter, it is merely redundant of the Fourth Amendment claims, and should be dismissed on that basis.  *Mabry*, 168 F. Supp. 3d. at 945.

C.    **Analysis of the Plaintiffs' Unlawful Detention and Unlawful Arrest Claims (Fourth Amendment)**

The scope of the Plaintiffs' Fourth Amendment seizure claims is unclear.  In Complaint paragraph 1, the Plaintiffs plead, "This is an action brought by the Plaintiffs against The CITY OF DALLAS for Officer Aaron Tolerton's use of deadly force, assault, *unlawful arrest, and detention* resulting in the unlawful death of Desmond Luster . . . ."  (emphasis added).  However, the Plaintiffs do not later plead explicit Fourth Amendment unlawful detention and arrest claims

as to Desmond in the Complaint, as they do with respect to DaMon.  (*See* Complaint at 30-31 ¶¶ 112-15 (pleading that Officer Tolerton arrested DaMon without probable cause.)  Nonetheless, even though the Plaintiffs do not explicitly plead Fourth Amendment unlawful detention and arrest claims as to Desmond, for the purpose of completeness, the Defendants will address the seizures of DaMon and of Desmond.

### 1. An officer may detain a suspect if there is reasonable suspicion of criminal activity.

The Fourth Amendment protects against "'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted).  The standard to be applied in addressing any claim that Officer Tolerton unlawfully detained Desmond is that of reasonable suspicion, which is less demanding than that for probable cause.  *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("the level of suspicion required for [an investigatory or] *Terry* stop is obviously less demanding than that for probable cause.").

A peace officer may lawfully detain a person for the purpose of temporarily investigating possible criminal activity, provided he has a reasonable, articulable suspicion based on objective facts that criminal activity may be underway or has occurred.  *See Brown v. Texas*, 443 U.S. 47, 51 (1979); *see also United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) ("Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion.").  "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances." *Michelletti*, 13 F.3d at 840; *United States v. Cortez*, 449 U.S. 411, 417 (1981) (explaining that "the totality of the circumstances—the whole picture—must be taken into account.").  "Indeed,

the totality of the circumstances should reflect the outcome of a process in which 'officers []

draw on their own experience and specialized training to make inferences from and deductions

about the cumulative information available to them that might well elude an untrained person.'"

*United States v. Neufeld-Neufeld*, 338 F.3d 374, 379 (5th Cir. 2003).

      **2.**      **Officer Tolerton had reasonable suspicion to detain Desmond, and the Defendants are entitled to summary judgment.**

The undisputed summary judgment evidence establishes that Officer Tolerton possessed

articulable, objective facts to justify Desmond's detention.  It is undisputed that Officer Tolerton:

- personally heard multiple loud "pop" sounds;

- was told by Flying J employee John Blue that Blue heard what Blue insisted were nearby gunshots;

- was told by a truck driver on the Flying J premises that he heard gunshots, and that the driver pointed Tolerton to the direction of the gunshot sounds;

- heard a DPD dispatcher broadcast a report of an armed encounter very near Tolerton's location, and that a man in a dark blue pickup truck was firing a gun at two males;

- was informed by another person that a man was shooting at someone, and that said person pointed Tolerton in the direction of the incident; and

- personally saw Desmond firing a pistol at two (2) fleeing juveniles.

The foregoing undisputed facts are far more than sufficient to create a reasonable suspicion that

Desmond was engaged in, or had engaged in, criminal activity.  Several potential Texas penal

offenses were in play:  unlawful carrying of a firearm (Tex. Pen. Code § 46.02), discharge of a

firearm inside the corporate limits of a municipality having a population of 100,00 or more (Tex.

Pen. Code § 42.12), deadly conduct by recklessly engaging in conduct that places another person

in imminent danger of serious bodily injury (Tex. Pen. Code § 22.05), aggravated assault with a

deadly weapon (Tex. Pen. Code § 22.02), attempted (capital) murder (Tex. Pen. Code §§ 15.01,

19.01, 19.02, 19.03(a)(7)).

Obviously, the Plaintiffs cannot dispute that Officer Tolerton had reasonable suspicion to detain Desmond.  However, even if the Court were to determine that Officer Tolerton lacked reasonable suspicion to detain Desmond, Tolerton is entitled to qualified immunity because any reasonable officer could have believed the detention was lawful.[3]  *United States v. Caruthers*, 458 F.3d 459, 464-68 (police officers responding to report of a black male in a red shirt and shorts firing a gun in the air had reasonable suspicion to detain a suspect wearing a red shirt); *United States v. Tolbert*, No. 1:14cr102-TCB, 2015 WL 3505147, at *6 (N.D. Ga. June 1, 2015) (officer had reasonable suspicion to detain *and probable cause to arrest* the suspect based upon reports of a weapon discharge at the location and the arrestee matching the description of the suspect as given an eyewitness).  The Defendants note that, here, Officer Tolerton personally saw Desmond firing a weapon at the juveniles, which the Plaintiffs admit in their Complaint.  For these several good reasons, Officer Tolerton is entitled to summary judgment as to any claim that he detained Desmond unlawfully.

The City is also entitled to summary judgment on this claim.  The undisputed evidence shows that Officer Tolerton did not make a reasonable mistake of fact or law that entitles him to qualified immunity.  Rather, the undisputed evidence shows affirmatively that Officer Tolerton's detention of Desmond was lawful.  That is, Officer Tolerton did not violate the Constitution.

Because Officer Tolerton did not violate the Constitution, the City is entitled to summary judgment, too.  *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (holding that there can be no governmental § 1983 liability where there is no underlying constitutional violation); *Brown v.*

---

[3] As with all of the federal claims against Tolerton, the Defendants ask the Court to affirmatively determine that Officer Tolerton had reasonable suspicion to detain Desmond, rather than merely to conclude that Tolerton is entitled to qualified immunity.  Both Tolerton and the City have a interest in a judicial determination that Tolerton did not violate the Fourth Amendment, rather than just a recitation the officer is entitled to qualified immunity.  *Pearson*, 555 U.S. at 812.  Officer Tolerton has an obvious interest in a judicial declaration that he did not violate the Constitution.  The City has an interest in foreclosing further litigation as to its liability under § 1983, as well as in an affirmation that the City's official policies are not constitutionally infirm.  *Id.*

*Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001) (reiterating that "if the plaintiff does not show any violation of his constitutional rights then there exists no liability to pass through to the county"). Accordingly, the City is entitled to summary judgment as to any claim that Desmond was unlawfully detained.

### 3.   An officer may arrest a suspect if there is probable cause to believe that the suspect committed an offense.

As with the issue of reasonable suspicion, the issue of whether there was probable cause to arrest Desmond and DaMon is a question of law. *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000). The constitutional tort of wrongful arrest requires a showing of no probable cause. *Brown v. Lyford*, 243 F.3d at 189. Probable cause exists if, at the time of the arrest, facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a prudent person, or one of reasonable caution, to believe, in the circumstances shown, that one has committed, is committing, or is about to commit an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). When determining whether a reasonable person would have believed that an offense occurred, the Court considers the expertise and experience of law enforcement officials. *See United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (citation omitted). "Probable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false.'" *Piazza*, 217 F.3d at 246 (citation omitted). In determining whether probable cause exists, the Court is required only to find a basis for an officer to believe to a "fair probability" that an offense occurred. *Id.* (citations omitted). A "fair probability" does not mean that a reasonable person would have believed it more likely than not, which is a preponderance of the evidence standard, that an offense occurred. *Garcia*, 179 F.3d at 269; It simply means "something more than a bare suspicion, but need not reach the fifty percent

mark." *Garcia*, 179 F.3d at 269; *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001). An officer's subjective reason for making an arrest need not be the criminal offense as to which the known facts provide probable cause. *Devenpeck v. Alford*, 543 U.S. 143, 146 (2004).

> **4.     Officer Tolerton had probable cause to arrest Desmond, and the Defendants are entitled to summary judgment.**

The undisputed summary judgment evidence establishes that Officer Tolerton had probable cause to arrest Desmond. The same undisputed facts that provided Officer Tolerton reasonable suspicion to detain Desmond provided Tolerton probable cause to arrest Desmond. Of those facts, the most compelling is that Officer Tolerton personally saw Desmond firing a pistol at the two juveniles who were fleeing from Desmond. *See, e.g., United States v. Tolbert*, 2015 WL 3505147, at *6 (holding that an officer had reasonable suspicion to detain *and probable cause to arrest* the suspect based upon reports of a weapon discharge at the location and the arrestee matched the description of the suspect as given an eyewitness). Notably, Officer Tolerton had facts even more inculpatory than did the officer in *Tolbert*, because here, Tolerton actually saw Desmond shooting a pistol at someone. If the officer in *Tolbert* had probable cause to arrest the suspect, then Officer Tolerton certainly did.

However, even if the Court determines that Officer Tolerton lacked probable cause to arrest Desmond, Tolerton is entitled to qualified immunity because any reasonable officer could have believed the arrest was lawful. Therefore, Officer Tolerton is entitled to summary judgment on the Plaintiffs' claim that Desmond was unlawfully arrested.

The City is also entitled to summary judgment on this claim. As before, the undisputed evidence shows that Officer Tolerton did not violate the Fourth Amendment. Officer Tolerton did not make a mistake of fact or law that requires the Court to engage in the analysis of whether a reasonable officer *could have* believed Tolerton's actions were lawful, because the undisputed

evidence shows affirmatively that Desmond's arrest was lawful.  Therefore, the City is entitled to summary judgment, because Officer Tolerton did not violate the Desmond's Fourth Amendment rights.  *Heller*, 475 U.S. 796 (1986) (holding that there can be no governmental § 1983 liability where there is no underlying constitutional violation); *Brown v. Lyford*, 243 F.3d at 191.  Thus, the City is entitled to summary judgment as to any claim that Desmond was unlawfully arrested.

### 5.    DaMon was not subjected to an unlawful detention, and the force used to detain DaMon was objectively reasonable and lawful.

Officer Tolerton had already removed Desmond from his truck and was in the process of handcuffing him when DaMon arrived at the scene.  (Tolerton Aff. at 1 (App'x at 1); DaMon Depos. at 39-41 (App'x at 59-61).)  DaMon was driving very fast, and his pickup also went over the curb as it fast approached Officer Tolerton and Desmond.  (Tolerton Aff. at 1 (App'x at 1); DaMon Depos. at 44-46 (App'x at 64-66).)   DaMon jumped out of his truck and approached Officer Tolerton and Desmond.  (*Id.* at 41 (App'x at 61).)  Officer Tolerton told DaMon several times to get on the ground, but DaMon did not comply with Tolerton's commands until he was finally persuaded to do so by Desmond.[4]  (*Id.* at 41-42 (App'x at 61-62).)  Two DPD officers, first Larry Moody and then Cathy Blanchard, quickly arrived.  (Tolerton Aff. at 1 (App'x at 1); Blanchard Aff. at 1 (App'x at 3); Moody Aff. at 1 (App'x at 5).)  Officer Moody held DaMon at gunpoint until Officer Blanchard arrived.  Officer Blanchard handcuffed DaMon until DaMon's role in events could be ascertained and the shooting scene secured.  (Blanchard Aff. at 1 (App'x at 3).)  DaMon was then placed in Officer Blanchard's patrol car.  (*Id.* at 1 (App'x at 3).)

It is beyond dispute that the safety of law enforcement officers during the performance of their duties is a "legitimate and weighty" concern.  *Pennsylvania v. Mimms*, 434 U.S. 106, 110

---

[4] DaMon testified that Officer Tolerton was yelling at him to get down on the ground, "but at that point, I didn't – I couldn't care less about his command."  (DaMon Depos. at 42 (App'x at 62).)  Tolerton later testified, "But then once I realized my brother was hit, I didn't care about being on the ground."  (*Id.*)

(1977).  Consequently, officers may use force during a *Terry*-type detention to the extent that "such steps [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [the] stop."  *United States v. Hensley*, 469 U.S. 221, 235 (1985).  Inherent in that statement is the requirement that courts must balance the level of force against the substantiality of the law enforcement interests precipitating it.  Relevant factors in that analysis include officers' reasonable suspicions regarding the threat posed by the suspect, and most especially, whether or not the suspect is thought to be armed.  *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) ("Under certain circumstances, the steps officers may permissibly take to protect their safety include drawing their weapons, placing a suspect in handcuffs, or forcing a suspect to the ground.").  *See also United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983) (holding that an armed approach and handcuffs were reasonable where one suspect was known to be dangerous and the other refused to comply with order to raise hands).

Had DaMon stayed in his truck, Officer Tolerton would have been justified to direct him to exit and detain him at gunpoint for an investigatory detention.  *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986) (holding that officers were justified in blocking the defendant's car, approaching with guns drawn, and ordering the occupants out of the car as a part of the Terry stop based upon a tip that the occupants were armed).  Here, DaMon interjected himself into the encounter between Officer Tolerton and Desmond.  DaMon leapt out of his truck in an obvious and understandable state of extreme agitation, and Officer Tolerton was justifiably concerned whether DaMon was also armed.  As it turned out, DaMon did not have a weapon on his person, but he did have a loaded .40 caliber pistol sitting on the center console of his truck.

The settled rule is that it is reasonable for a police officer to temporarily display force or restrain a person until that person's relationship to the suspect and possible reaction to the situa-

tion can be ascertained.  Instructive is *Thompson v. City of Lawrence*, 58 F.3d 1511 (10th Cir. 1995).  In *Thompson*, Frances Wisdom and her son entered A.J.'s Bonding just prior to several armed officers entering to arrest Thompson on a theft charge.  *Id*. at 1514.  Wisdom and her son were released while the premises were searched.  *Id.*  Wisdom brought suit under § 1983, alleging that both her seizure and the associated use of force were unlawful.  The trial court granted summary judgment to the defendants, and the Tenth Circuit affirmed.  *Id.*  The appellate court determined that the officers' actions, which included "shov[ing] [Wisdom] to the floor, drawing a weapon on her, and handcuffing her," were objectively reasonable self-protection measures:

> When the officers entered A.J.'s Bonding, they were unaware that Wisdom would be present and were equally unaware of the nature of her relationship to Thompson.  We have already established that the officers had probable cause to arrest Thompson based on a suspected crime.  The governmental interest in securing the area around Thompson and protecting officers from potential danger is sufficient to justify the temporary detention of Wisdom.  ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself . . . .")

*Thompson*, 58 F.3d at 1517 (internal citations omitted).

The *Thompson* court emphasized that the uncertainties that the officers faced justified a temporarily detention and the use of force.  *Id.* at 1517 ("Given the volitility of the situation, we hold that it was objectively reasonable for the officers to temporarily restrain Wisdom, whose relationship to Thompson and possible reaction to the situation were unknown.").  Those factors were present when Officers Tolerton, Moody, and Blanchard encountered Desmond and DaMon, but with the added dimensions that Tolerton learned that Desmond and DaMon were brothers, Tolerton could see that DaMon was agitated, and DaMon initially argumentatively refused to comply with Tolerton's verbal commands to get on the ground.  Under those circumstances, both DaMon's detention and Tolerton's threat to use lethal force to accomplish it were objectively reasonable.  Therefore, Officer Tolerton is entitled to summary judgment on this claim.

Finally, it should not be overlooked that even the Plaintiffs' designated expert on police procedures, Craig Rigtrup, concludes that DaMon's detention was proper:

> Q.  Why don't you go ahead and read that first and second sentence [of a portion of Rigtrup's expert report].
>
> A.  "Upon doing so, Damon Luster exited his vehicle and in the process of which, in the moment apparently there was a question as to Damon Luster's role and intent in the matter and was initially detained at approximately 1335 hours due to reasonable suspicion that Damon was possibly a suspect in the incident."
>
> Q.  Okay.  You would agree that there was a legitimate reason for Officer Tolerton to detain Da'Mon Luster at the scene of the shooting and to place Da'Mon Luster into submission?
>
> A.  In the moment, yes.
>
> Q.  And why would that have been reasonable in your view?
>
> A.  Because of all the unknowns in the moment.
>
> Q.  And those unknowns would include that while Officer Tolerton is dealing with Desmond Luster who he had just shot at, you have another man who drives up in a truck unknown?
>
> A.  Right.  You don't know what his role is in the situation.
>
> Q.  You don't know what his role is, right?
>
> A.  Yeah.
>
> Q.  You don't know whether he's armed, right?  Right?
>
> A.  Of course, yeah.
>
> Q.  Officer Tolerton doesn't know what Da'Mon's intentions are, does he?
>
> A.  No.
>
> Q.  So it would have been very reasonable and proper for Officer Tolerton to insist that Da'Mon Luster get on the ground and place himself in a position where he would be a more minimal threat to anyone present, right?
>
> A.  Right.

(Rigtrup Depos. at 103-04 (App'x at 109-110).)  Thus, there is no genuine issue of fact here.

Officer Tolerton's actions, as well as the actions of the officers who assisted Tolerton in placing DaMon into custody by holding him at gunpoint and handcuffing, were objectively reasonable.

Alternatively, Officer Tolerton is entitled to qualified immunity. As the foregoing cases illustrate, any reasonable officer in Tolerton's circumstances could have believed that DaMon's detention at gunpoint and handcuffing was lawful, both as a general legal proposition, and under the specific circumstances faced by Tolerton. Put differently, DaMon cannot show that his right to be free from temporary detention was clearly established not merely in an abstract sense, but also in the more particularized sense of his encounter with the officers, such that it should have been apparent that the officers' actions were unlawful in light of pre-existing law. *Creighton*, 483 U.S. at 640; *Pierce*, 117 F.3d at 871 (holding that to overcome qualified immunity, pre-existing law must truly compel the conclusion that what the defendant is doing violates federal law in the circumstances). Therefore, Officer Tolerton is entitled to qualified immunity.

The City is also entitled to summary judgment on this claim. As before, the undisputed evidence shows that Officer Tolerton's did not violate the Fourth Amendment. Officer Tolerton did not make a mistake of fact or law that requires the Court to analyze whether a reasonable officer *could have* believed Tolerton's actions were lawful, because the undisputed evidence shows affirmatively that DaMon's detention was lawful. Therefore, the City is entitled to summary judgment, because Officer Tolerton did not violate the Desmond's Fourth Amendment rights. *Heller*, 475 U.S. 796 (1986). Consequently, the City is entitled to summary judgment as to any claim that DaMon was detained unlawfully, or that the force used to effect DaMon's detention was objectively unreasonable or excessive to the need.

### 6. DaMon was not subjected to an unlawful arrest, because there was probable cause to arrest DaMon for unlawfully carrying a pistol.

DaMon pleads that he was subjected to an unlawful arrest. That claim fails because there

was probable cause to arrest DaMon for the penal offense of unlawfully carrying a weapon.  The

undisputed evidence is straightforward:

- DaMon was not a law enforcement officer or a member of the military
  (DaMon Depos. at 25-26 (App'x at 45-46);

- DaMon stated to DPD detective Duggan that he did not have a Texas permit for
  concealed carry of a weapon
  (DaMon Depos. at 24-25 (App'x at 44-45); DaMon Video (App'x at 85));

- DaMon had a .40 caliber semi-automatic pistol in his pickup truck
  (DaMon Depos. at 19-20 (App'x at 39-40); Rogers Aff. at 1 (App'x at 6));

- DaMon set his pistol on the center console/armrest of his pickup truck
  (DaMon Depos. at 19 (App'x at 39));

- DaMon was operating his pickup truck immediately before being detained;

- DaMon's pistol was in plain view
  (Rogers Aff. at 1 (App'x at 6)); DaMon Depos. at 20-25 (App'x at 40-45));

- DaMon told DPD officer Rogers that there was a weapon in his truck
  (Rogers Aff. at 1 (App'x at 6));

- Officer Rogers looked through the windshield of DaMon's truck and saw DaMon's .40
  caliber semiautomatic pistol resting on the center console to the right of the driver's seat
  (Rogers Aff. at 1 (App'x at 6));

- Officer Rogers removed the pistol's magazine, cleared the weapon, and set the pistol and
  the magazine back on the truck's center console/armrest where he found it
  (Rogers Aff. at 1 (App'x at 6)); and

- Photographs taken of the interior of DaMon's truck (App'x at 18-20) accurately show
  where DaMon had set his pistol on the center console/armrest of his truck
  (DaMon Depos. at 20-25 (App'x at 40-45)).

Section 46.02 of the Texas Penal Code regulates the carrying of handguns.  DaMon's

encounter with Officer Tolerton occurred on 9 February 2015.  At that time, § 46.02 provided:[5]

> (a-1)  A person commits and offense if the person intentionally, know-
> ingly, or recklessly carries on or about his or her person a handgun in a

---

[5] After 1 January 2016, § 46.02(a-1) provides that a person commits an offense if the person "intentionally, know-
ingly, or recklessly carries on or about his person a handgun . . . if the person is not: (1) inside of or directly en route
to a motor vehicle or watercraft that is owned by the person or under the person's control."

motor vehicle or watercraft that is owned by the person or under the person's control at any time in which:

(1) the handgun is in plain view[.]

As a matter of law, the foregoing undisputed facts provide more than ample probable cause for DPD officers to believe that DaMon had violated § 46.02 of the Texas Penal Code. In fact, such probable cause existed from the moment that DaMon told Officer Rogers that there was a pistol in his truck and Officer Rogers saw DaMon's pistol in plain view on the console/armrest. *United States v. Gonzales*, No. 09cr366-XR, 2010 WL 446471, at *2 (W.D. Tex. Feb. 1, 2010) (construing § 46.02(a-1) and holding that if even only the butt of the defendant's handgun was in plain view, the defendant was in violation of § 46.02(a-1) and the officer had probable cause to arrest). Accordingly, to the extent that DaMon's wrongful arrest claim is premised upon an alleged over-extended detention, the claim fails because probable cause existed to arrest DaMon before he was transported to DPD headquarters to be interviewed regarding his knowledge of the events leading up to Desmond's tragic encounter with Officer Tolerton. Therefore, the Defendants are entitled to summary judgment as to DaMon's wrongful arrest claim.

*City of Los Angeles v. Heller* also applies to this claim. DaMon does not appear to plead his wrongful arrest claim against Officer Tolerton, unless the Complaint is understood to plead that DaMon's initial detention at gunpoint is considered an "arrest" instead of a temporary detention until DaMon's role in the encounter could be sorted out. In any event, because there was no unlawful seizure of DaMon, whether deemed a "detention" or an "arrest," the lack of an underlying constitutional violation precludes municipal liability under § 1983. *Heller*, 475 U.S. at 799. Therefore, the Court should grant summary judgment as to this claim.

**D.  The Defendants Are Entitled to Summary Judgment as to the Plaintiffs' Fourteenth Amendment Equal Protection Claims.**

Paragraphs 3 and 75 of the Complaint allege that Desmond and DaMon were subjected to

purposeful discrimination:

> 3.  Plaintiffs allege that the Dallas City Council delegated the authority for setting policies, including training of DPD officers to the Chief of Police, David O. Brown ("Brown") and Brown had a duty, but failed to implement and/or enforce policies, practices, and procedures for DPD ("DPD") that respected Desmond Luster's and DaMon Luster's constitutional rights to protection and equal treatment under the law. . . . Defendant The CITY OF DALLAS, the policymaker, the Dallas City Council and Chief Brown's failure to implement the necessary policies and the implementation of unconstitutional policies deprived Desmond Luster and DaMon Luster of equal protection and due process under the Fourth Amendment . . . .

> 75.  Defendants' actions demonstrate that before his death Decedent Desmond Luster and Da'Mon Luster were the victims of purposeful discrimination, either because of their race and gender or due to an irrational or arbitrary state classification unrelated to a legitimate state objective.

The Plaintiffs fail to plead plausible equal protection claims, and DaMon disavowed any claim that he or Desmond were less favorably treated than were others similarly situated.

### 1.     The Plaintiffs fail to plead viable equal protection claims.

The Fourteenth Amendment's Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, which "is essentially a direction that all persons similarly situated should be treated alike." *Club Retro, L.L.C. v., Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  Thus, any equal protection claim must be grounded on a comparison between the treatment the state gives similarly situated individuals. *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009).  "The essence of an equal protection claim is that other persons similarly situated as is the claimant unfairly enjoy benefits that he does not or escape burdens to which he is subjected."  *Samaad v. City of Dallas*, 940 F.2d 925, 941 (5th Cir. 1991) (citing *United States v. Cronn*, 717 F.2d 164, 169 (5th Cir.1983)).

To allege an equal protection violation, a plaintiff typically claims that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro*, 568 F.3d at 212 (internal quotation marks omitted). Thus, to prevail on their § 1983 claims based upon the Equal Protection Clause, the Plaintiffs must plead and show evidence that a similarly situated group escaped specific burdens to which Desmond and DaMon were subjected. *See id.* at 941-42; *accord Gonzalez v. City Plan Comm'n*, No. 3:05cv1737-M, 2006 U.S. Dist. LEXIS 4415, at *7-8 (N.D. Tex. Feb. 3, 2006) (Lynn, J.), *cited in Wilson v. Brestrup*, No. 3:05cv719-M, 2006 WL 929284, at *3 (N.D. Tex. Apr. 10, 2006) (dismissing the plaintiff's claims arising under the Equal Protection Clause because the plaintiff did not plead or show evidence of a similarly situated group); *Scroggins v. GEO Group, Inc.*, No. 2:12cv1752, 2015 WL 1637183, at *3 (W.D. La. Apr. 10, 2015) ("In order to successfully plead an equal protection claim, a civil rights plaintiff must allege that the defendant created two or more classifications of similarly situated prisoners that were treated differently, and that the classification had no rational relation to any legitimate governmental objective.") (citing *Johnson v. Rodriguez*, 110 F.3d 299, 306, 307 (5th Cir. 1997)).

Accordingly, a § 1983 claim based upon the Fourteenth Amendment's Equal Protection Clause requires proof a discriminatory intent or purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). A discriminatory purpose, as a motivating factor, implies that the actor "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r. Feeney*, 442, U.S. 256, 259 (1979). "A discriminatory purpose is more than a mere awareness of the consequences." *Ricketts v. City of Columbia*, 36 F.3d 775, 781 (8th Cir. 1994). Instead, "purposeful discrimination requires more than 'intent as volition or intent as awareness of conse-

quences.' . . . It instead involves a decisionmaker's undertaking a course of action "'because of," not merely "in spite of," [the action's] adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (citing *Feeney*, 442 U.S. at 259) (internal citation omitted).

Here, the Plaintiffs fail to plead essential allegations to support plausible equal protection claims. The Plaintiffs fail to plead the existence of, much less identify, a similarly situated group that has escaped the burdens to which the Plaintiffs claim Desmond and DaMon were subjected. (*See* Complaint.) The Plaintiffs implicitly plead that the Defendants acted with a discriminatory intent or purpose, by pleading the conclusory allegation that Desmond and DaMon were "victims of purposeful discrimination," but the Plaintiffs fail to identify any such intent or purpose. (*See id.*) Even giving the Complaint the most generous reading possible, it is clear that the Plaintiffs have merely recited the bare elements of an equal protection claim, while omitting any facts that would render the claims facially plausible. Such bare-bones allegations fail to state a plausible claim. *Iqbal*, 556 U.S. at 678 (holding that a "formulaic recitation of the elements of a cause of action" are insufficient, and that a claim should be dismissed when it merely tenders "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Therefore, any purported equal protection claim against the Defendants must be dismissed for failure to state a plausible claim.

 2. **Plaintiffs lack evidence to raise a genuine issue of material fact as to any equal protection claim against the Defendants.**

Even if the Plaintiffs had pleaded a plausible equal protection claim, the Defendants are nonetheless entitled to summary judgment because the Plaintiffs lack evidence to support such a claim. In fact, to the contrary, DaMon testified that he does not believe that he was subjected to discrimination. The Defendants asked DaMon in his deposition about the factual bases, if any, for his equal protection claims. DaMon did not provide any factual bases to support his claims.

After reviewing with DaMon the specific allegations in Complaint paragraph 75, the Defendants explored with DaMon the factual bases, if any, of the equal protection claims:

[ paragraph 75 read ]

Q. Now, I'm not asking you to digest all that, I want to take it in small bites. Do you believe that you were subjected to discrimination because of your race?

A. I don't feel that I was discriminated because of my race.

Q. Okay.

A. No.

Q. Do you feel that you were subjected to discrimination because of your gender? And I – maybe that interchanges for sex, your being male?

A. I believe, you know, if you're a large male, that, yeah, it's kind of intimidating to one that's not as large.

Q. Right. But what I'm asking you is do – do you – do you believe that anyone involved in this debacle discriminated against you because you are a man?

A. Discriminated against me as a man?

Q. Yeah, because you're a man.

A. As I just said, a minute ago, sir.

Q. Is that no?

A. I gave the answer that I could give.

Q. Do you think that you were classified in any particular way that resulted in you being treated unfairly, that you were put into some pigeonhole?

A. Yes, I do.

Q. And what is – what would that be?

A. Police officers just doing whatever they want to do and hiding behind the badge.

Q.  Okay.  So you're saying that the police – it's not that you were categorized as something, but just the police officers do whatever they want to do?

A.  Police officers do whatever they want to do and hide behind the badge, sir.

(DaMon Depos. at 56-57 (App'x at 76-77).)

DaMon's answers fail to raise a genuine issue of fact for trial.  DaMon does not identify a similarly situated group that has escaped the burdens to which he claims he or his brother were subjected; does not provide any facts suggestive of a discriminatory purpose or motive on the part of the Defendants toward any identifiable group, particularly African-Americans or males; and does not provide any factual basis to support a contention that the Defendants intentionally treated him or his brother differently from others similarly situated and that there was no rational basis for the difference in treatment.  For these additional reasons, the Defendants are entitled to summary judgment as to the Plaintiffs' Fourteenth Amendment equal protection claims.

The equal protection claims become even more insupportable when viewed in the context of the specific actions taken by Officer Tolerton and other DPD personnel.  The Plaintiffs do not plead, and cannot produce any evidence, that (1) Tolerton would not have seized Desmond in the manner he did if Desmond were not an African-American or a male; (2) Tolerton would not have seized DaMon in the manner he did if Desmond were not an African-American or a male; (3) the other DPD personnel would not have seized DaMon in the manner they did if DaMon were not an African-American or a male; or (4) other DPD personnel would not have interviewed DaMon and considered charging him with unlawfully carrying a weapon if he were not an African-American or a male.

Finally, because there was no underlying deprivation of equal protection here, as a matter of law the Plaintiffs' equal protection claims against the City necessarily fail, irrespective of the

City's policies.  *See City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (holding that there can be no governmental § 1983 liability where there is no underlying constitutional violation); *Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001) (The Fifth Circuit has reiterated that principle, stating that "if the plaintiff does not show any violation of his constitutional rights then there exists no liability to pass through to the county").  Accordingly, both Officer Tolerton and the City are entitled to summary judgment on the Plaintiffs' equal protection claims.

**E.      The City Is Entitled to Dismissal of the Plaintiffs' State Law Claims
          Against Officer Tolerton.**

The Complaint refers to tort claims arising under Texas state law, the Texas Wrongful Death Statute, Texas Civil Practice and Remedies Code sections 71.001 et seq., and the Texas Survival Statute, Texas Civil Practice and Remedies Code section 72.021.  (Complaint at 1-4 ¶¶ 1, 5-9.)  The Plaintiffs' Original Petition, which was filed in the County Court at Law No. 4 of Dallas County, Texas, pleaded assorted negligence claims against all of the named defendants, which necessarily included the City and its employee, Officer Tolerton.  (*See* ECF No. 2 at 6-21.)  Prior to removing the Plaintiffs' suit to this district court on the basis of federal question jurisdiction (*see* ECF No. 1), the City filed an answer that included a motion to dismiss the Plaintiffs' purported state law claims against its employee, pursuant to the Texas Election of Remedies Statute, Texas Civil Practice and Remedies Code section 101.106(e).  (*See* ECF No. 2 at 45 (City of Dallas' Original Answer and Motion to Dismiss at 5 ¶ 4.1).)  The Court under-standably has not acted on that motion, so the City re-urges it here.

**1.      The Texas Tort Claims Act and the Texas Election of Remedies
          Statute**

As have many other states, Texas has enacted a limited statutory waiver of its sovereign immunity.  *See* Tex. Civ. Prac. & Rem. Code ch. 101 (the Texas Tort Claims Act ("TTCA")).  Because plaintiffs frequently sought to avoid the restrictions imposed by the TTCA by suing

government employees, in 1985 the Texas Legislature enacted an election of remedies provision that barred any action by a claimant against a government employee whose act or omission gave rise to the claim where there is a judgment or a settlement of a claim involving the same subject matter.[6]  However, as the Texas Supreme Court explained in *Mission Consolidated Independent School District v. Garcia*, 253 S.W.3d 653 (Tex. 2008), the 1985 amendment still did not prevent plaintiffs from pursuing alternative theories against both the governmental unit and its employees prior to obtaining a judgment or reaching a settlement.  *Mission*, 253 S.W.3d at 655-56.  Consequently, governmental units and their employees were required to expend considerable resources defending redundant claims brought under alternative theories of recovery.

As part of Texas's comprehensive effort in 2003 to reform its tort system, the Legislature amended section 101.106 of the TTCA, entitled "Election of Remedies."  Section 101.106(e) now provides:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.[7]

For the Court's convenience, the City includes a copy of section 101.106 in its appendix.

"Section 101.106 . . . is designed to force a plaintiff to decide at the outset whether an employee acted independently, and is thus solely liable, or whether she acted within the general scope of her employment so that the governmental unit is vicariously liable."  *City of Arlington v. Randall*, 301 S.W.3d 896, 903 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Mission*, 253 S.W.3d at 657).  By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the TTCA or proceeding against the employee alone,

---

[6] *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305, which provided that "[a] judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of a governmental unit whose act or omission gave rise to the claim."

section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs.[8]

*Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 398 (Tex. App.—Fort Worth 2008, no pet.) (citing *Mission*, 253 S.W.3d at 656-57).

Here, Plaintiffs did precisely what the TTCA proscribes, by pleading tort claims against both the City and its employee, Officer Tolerton. The Plaintiffs sued both the City and Tolerton. Paragraph 14 of the original petition, captioned "Respondeat Superior," pleads explicitly that the corporate defendants are responsible for the acts of employees, whom the Plaintiffs plead were acting "within the scope of their employment or agency and in furtherance of the Defendants' businesses." (ECF No. 2 at 9 (Plaintiffs' Original Petition at 4 ¶ 14).) The Plaintiffs alleged that Officer Tolerton was negligent in that, *inter alia*, he "failed to exercise ordinary care in determining whether he was justified in using deadly force against Decedent Desmond Luster." (*Id.* at 13 (Plaintiffs' Original Petition at 8 ¶ 39).)

Section 101.106(e) of the TTCA is unconditional and mandatory. If a plaintiff files suit against both the governmental entity and its employee, a court *must immediately dismiss* the employee upon filing of a section101.106(e)-based motion. A governmental entity perfects the statutory right to dismissal of its employees upon the filing of the motion to dismiss. *Randall*, 301 S.W.3d at 903. A plaintiff cannot alter its election of remedies by amending his petition. Once a plaintiff pleads tort claims against a governmental entity, its employee, or both, that election is irrevocable and cannot be altered through an amended complaint. *See, e.g.*, *Randall*, 301 S.W.3d at 903 ("Even if the plaintiff amends his petition after the government files a motion to

---

[7] Per section 101.106(e), the City is the proper movant because it is the governmental unit that is/was Officer Tolerton's employer.

[8] *All* tort theories alleged against a governmental entity, including intentional torts, and without regard to whether the governmental entity is sued alone or together with its employees, are assumed to be "under" the TTCA for purposes of section 101.106. *See Mission*, 253 S.W.3d at 656-57 (citing *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997)).

dismiss, the amended petition does not moot the right created by the filing of a motion under section 101.106."); *Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 121-22 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that the plaintiff's original petition, not an amended petition, controls whether dismissal of the governmental unit's employees under § 101.106(e) is appropriate); *Villasan v. O'Rourke*, 166 S.W.3d 752, 762 (Tex. App.—Beaumont 2005, pet. denied) (concluding that if dismissal of a government employee is appropriate based on the original petition, the filing of an amended petition does not avoid the mandatory language of section 101.106(e), and stating that "the trial judge's duty to dismiss the government's employee [is] mandatory when the government files a motion requesting that the claims against its employee be dismissed").

**2.      Section 101.106(e) applies to the Plaintiffs' Texas common law and statutory claims against Officer Tolerton.**

Rather than to dismiss their Texas tort claims against Officer Tolerton, the live Complaint continues to assert those claims.  (*See* Complaint at 1-2 ¶ 1) (asserting that the Plaintiffs are entitled to recover against both the City and Officer Tolerton "to the full extent applicable by law" under the Texas Wrongful Death Statute and the Texas Survival Statute).  Those claims must be dismissed immediately as to Officer Tolerton.  *Kelley v. City of Dallas*, No. 3:17cv1015-B-BK, 2017 WL 3891680, at *7 (N.D. Tex. Aug. 17, 2017) ("In the present case, Plaintiffs chose to file state law tort claims against both the City and the Individual Defendants arising out of the same subject matter.  As such, the Individual Defendants are entitled to immediate dismissal of the claims against them with prejudice." (citations omitted)); *Guerrero v. City of El Paso*, No. EP-11cv101-KC, 2011 WL 3880946, at *4 (W.D. Tex. Sept. 1, 2011) (dismissing a wrongful death claim against the City of El Paso's police officers pursuant to a section 101.106(e) motion filed by the city); *Neal v. City of Hempstead*, No. 4:12cv1733, 2014 WL 3907770, at *14 (S.D. Tex. Aug. 11, 2014) (applying section 101.106(e) to the plaintiff's Texas Survival Statute claim).

Therefore, the Court is now obligated to dismiss the Plaintiffs' state tort claims against Officer Tolerton.

**F.     The City Also is Entitled to Dismissal of the Plaintiffs' State Law Claims Against the City.**

The City's answer to the Plaintiffs' Original Petition also included a motion to dismiss the Plaintiffs' state law claims as against the City, pursuant to Texas Civil Practice and Remedies Code section 101.057, on the basis that there is no waiver of the City's governmental immunity from claims based upon intentional torts.  (*See* ECF No. 2 at 44 (City of Dallas' Original Answer and Motion to Dismiss at 4-5 ¶ 3.1—3.5).)

In Texas, a city is immune from liability unless the legislature waives its sovereign immunity by clear and unambiguous language." *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614, 622 (N.D. Tex. 1999), *aff'd sub nom.  Abdeljalil ex rel. Walker v. City of Fort Worth*, 234 F.3d 28 (5th Cir. 2000) (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995)). The TTCA provides a limited waiver of this immunity in certain situations involving the use of a motor-driven vehicle or personal injury and death caused by the use of tangible personal or real property.  Tex. Civ. Prac. & Rem. Code § 101.021.  However, the TTCA further provides that the limited statutory waiver of immunity does not apply to any claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." *Id.* § 101.057(2); *see also Blair v. City of Dallas*, No. 3:14cv1515-P, 2016 WL 7735758, at *2 (N.D. Tex. Feb. 17, 2016) (Solis, J.). The section 101.057(2) exception overrides the limited waiver of governmental immunity provided by § 101.021.  *See, e.g.*, *City of Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied) (holding that excessive force is an intentional tort for which a city has immunity, even if it involves the use of a motor vehicle, or tangible or real property), *cited in Blair*, 2016 WL 7735758, at *2.

A plaintiff cannot create a cause of action against a governmental unit by defining an intentional action as negligence:

> If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the [TTCA]. A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence.

*City of Waco v. Williams*, 209 S.W.3d 216, 222-23 (Tex. App.—Waco 2006) (citing *Harris County v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding the intentional-tort exception from the TTCA's limited waiver of immunity applicable to the plaintiff's negligence claim that an officer, who had intentionally shot the plaintiff during a traffic stop, negligently discharged his pistol and negligently effectuated arrest)).

Federal courts in Texas have applied the same analysis in finding no waiver of immunity. *See, e.g.*, *Gonzales v. City of Corpus Christi*, No. C-05-2802005, WL 3058168, at *11-12 (S.D. Tex. Nov. 9, 2005) (despite claim of alleged misuse of handcuffs and leg irons, "all of plaintiff's damages arise out of the claimed instance of excessive force"); *Holland v. City of Houston*, 41 F. Supp. 678, 713 (S.D. Tex. 1999) ("Where the essence of a claim under the TTCA arises from an intentional tort, allegations of negligence are insufficient to avoid the § 101.057 exception to liability."), *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008-09 (E.D. Tex. 1997) ("Plaintiffs cannot circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence when the shooting event upon which they base their claims is actually an intentional tort."). Therefore, the City is entitled to summary judgment as to the Plaintiffs' state tort claims against it.

## IV.   CONCLUSION

For the reasons herein stated, there is no genuine issue with respect to any material fact as to Plaintiffs; federal detention, arrest, equal protection, and state tort claims, and the Defendants

are entitled to summary judgment as a matter of law.  Also, Officer Tolerton has established his entitlement to qualified immunity as to the federal claims in issue in this motion.  Accordingly, partial summary judgment should be granted on the Fourth Amendment seizure claims as to both Desmond Luster and DaMon Luster, Damon Luster's excessive force claim, the Plaintiffs' Fourteenth Amendment equal protection claims, and the Plaintiffs' state tort claims, all in favor of the Defendants.  Only the Plaintiffs' Fourth Amendment excessive force claims directed to Officer Tolerton's use of force against Desmond Luster should remain for trial.

WHEREFORE, the Defendants City of Dallas Aaron Tolerton pray that his motion for partial summary judgment be granted, that the Court dismiss with prejudice all of the claims that are the subject of this motion, and that the Court grant the Defendants all other relief that is consistent with this motion.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Larry E. Casto
City Attorney

*s/ Jason G. Schuette*
Senior Assistant City Attorney
Texas State Bar No. 17827020
jason.schuette@dallascityhall.com

Tatia R. Wilson
Senior Assistant City Attorney
Texas State Bar No. 00795793
tatia.wilson@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas  75201
Telephone:     214-670-3519
Facsimile:      214-670-0622

ATTORNEYS FOR THE DEFENDANTS
CITY OF DALLAS, TEXAS AND AARON TOLERTON

## CERTIFICATE OF SERVICE

I certify that on 11 December 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Charles A. Bennett
Ted B. Lyon & Associates
18601 Lyndon B. Johnson Freeway
Mesquite, Texas 75150
*Attorneys for the Plaintiffs*

Don N. High
Attorney at Law
816 Greylyn Drive
Plano, Texas 75075
*Counsel for the Plaintiffs*

Michael B. Jones
Logan R. Adcock
Canterbury, Gooch, Surratt, Shapiro, Stein & Gaswirth, P.C.
5005 LBJ Freeway, Suite 1000
Dallas, Texas 75244
*Attorneys for the Defendants*
*FJ Management Inc. and Flying J. Transportation, LLC*

> *s/ J. G. Schuette*
> Senior Assistant City Attorney