IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CASSANDRA LUSTER, Individually § <br> and A/N/F/ of D. L., a Minor Child, et al., § <br>     Plaintiffs, § <br> § <br> v. § <br> § <br> CITY OF DALLAS, et al., § <br>     Defendants. § <br> § | Civil Action No. 3:16-CV-00396-B (BK) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Boyle's *Order of Reference*, Doc. 75, and 28 U.S.C. § 636(b), Defendant Pilot Travel Centers, LLC's *Motion for Summary Judgment*, Doc. 67, has been referred to the undersigned for findings of fact and a recommended disposition. For the reasons stated herein, Defendant's motion should be **GRANTED**.

**I. BACKGROUND**

This civil action arises from the fatal shooting of Desmond Luster ("Decedent") by Aaron Tolerton, a City of Dallas Police officer, in February 2015. The following facts are undisputed: On the day in question, Aaron Tolerton, then-employed as a City of Dallas police officer and wearing a "class B uniform," was working an off-duty security job at a the Flying J truck stop located at the northwest corner of Bonnie View Road and Interstate 20 in Dallas, Texas. Doc. 68 at 6; Doc. 95 at 11. Flying J is owned and operated by Pilot Travel Centers, LLC ("Pilot"). Doc. 68 at 7. At some point, Flying J employees and patrons alerted Tolerton to suspected gunshots. Doc. 68 at 6; Doc. 95 at 12. Tolerton was also informed over his Dallas Police Department ("DPD") radio that a man in a blue pickup truck was firing a gun at someone near his location. Doc. 68 at 6; Doc. 95 at 12. After walking to the eastern edge of the Flying J premises and

looking north, Tolerton observed Decedent off Flying J premises standing next to his vehicle shooting at two fleeing individuals, one of whom was running southbound toward Tolerton.[1] Doc. 68 at 6  Doc. 95 at 12.  While Decedent returned to his truck, Tolerton ordered the individual to the ground.  Doc. 68 at 6; Doc. 95 at 13.  As Decedent drove his truck southbound toward Tolerton and the individual's location, Tolerton fired his duty pistol at Decedent and the vehicle crashed into the fence surrounding Flying J premises.  Doc. 68 at 6; Doc. 95 at 13.  When Decedent's brother, DaMon Luster, arrived on the scene shortly after, Tolerton detained him.  Doc. 68 at 6; Doc. 95 at 14-15.  Decedent eventually died from gunshot wounds sustained during the Incident.  Doc. 68 at 6; Doc. 95 at 15.

In February 2016, Plaintiffs Cassandra Luster, individually and as next friend of D. L., a minor child, DaMon Luster, Desmond Luster Jr., and Beverly Diana Luster, individually as administrator of Decedent's estate, filed this action in state court against, *inter alia*, the City of Dallas, Tolerton, and Pilot.[2]  Doc. 2 at 6-21.  Thereafter, the City of Dallas removed the case to this Court based on federal question jurisdiction.  Doc. 1.  In their operative complaint, Plaintiffs assert claims against Pilot for negligently hiring, training, and supervising Tolerton, and seek actual and punitive damages.  Doc. 41 at 31-33.  Plaintiffs also bring claims against all Defendants under the Texas Wrongful Death Act.  Doc. 41 at 3-4.  In December 2017, Pilot moved for summary judgment on all of Plaintiffs' claims.  Doc. 67.  In January 2018, Plaintiffs filed a response, Doc. 94, as well as a motion to delay a ruling on Pilot's motion for summary judgment, Doc. 93.  The District Judge abated the briefing schedule pending a resolution of

---

[1] Decedent allegedly suspected the two individuals of burglarizing his home that same day.  Doc. 68 at 6; Doc. 95 at 9-11.
[2] Cassandra Luster is Decedent's surviving spouse, D.L. and Desmond Luster Jr. are Decedent's surviving children, and Beverly Diana Luster is Decedent's mother.  Doc. 41 at 3-4.

Plaintiffs' motion to delay. Doc. 103. In March 2018, the undersigned denied Plaintiffs' motion to delay. Doc. 105. After briefing resumed, Pilot filed its reply. Doc. 115; Doc. 118.

## II. APPLICABLE LAW

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). When ruling on a motion for summary judgment, the court must resolve all reasonable doubts in favor of the nonmoving party. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 248. Upon this showing, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587 (citation and internal quotation marks omitted).

## III. ARGUMENT AND ANALYSIS

A.   **Negligent Hiring, Training, and Supervision Claims**

Pilot moves for summary judgment as to Plaintiffs' direct negligence claims on the grounds that, *inter alia*, Tolerton was acting as an on-duty police officer when the Incident

occurred and therefore, pursuant to the holding in *Ogg v. Dillard*, 239 S.W.3d 409, 421 (Tex. App.—Dallas 2007, pet. denied), Pilot's conduct in hiring, training, or supervising Tolerton cannot be the proximate cause of Plaintiffs' injuries and damages. Doc. 68 at 10-15. In response, Plaintiffs concede that they have no evidence to support their negligent hiring claim. Doc. 95 at 21. Plaintiffs contend, however, that summary judgment as to its negligent training and supervision claims is improper because: (1) *Ogg* is "ambiguous," Doc. 95 at 26; (2) Tolerton's allegedly tortious acts occurred while he was protecting Pilot's property, ejecting trespassers, and enforcing Pilot's rules and regulations, thus determination of his duty status should go to a jury, Doc. 95 at 26-27; (3) several cases on which Pilot relies, including *Ogg*, are factually distinguishable, Doc. 95 at 29-31; (4) Pilot exercised sufficient control over Tolerton such that it can be held liable for his actions, Doc. 95 at 31-40; and (5) ordinary minds could disagree as to Tolerton's duty status since he testified that he worked for Pilot for four years and considered it his "regular off-duty job," Doc. 95 at 47-48.

     To impose liability under a theory of negligent supervision, a plaintiff must show that the employer's failure to supervise its employees caused the plaintiff's injuries. *Dangerfield v. Ormsby*, 264 S.W.3d 904, 913 (Tex. App.—Fort Worth 2008, no pet.). To impose liability under a theory of negligent training, a plaintiff must show that a reasonably prudent employer would have provided training beyond that which was given, and that the employer's failure to do so caused the plaintiff's injuries. *Id.* at 912-13. While an employer may be held directly liable for the acts of an employee regardless of whether the employee was acting in the course and scope of his or her employment when the tortious act occurred, *Wren v. G.A. T.X. Logistics, Inc.*, 73 S.W.3d 489, 496 (Tex. App.—Fort Worth, 2002) (citations omitted), the plaintiff's harm must still be "foreseeable in the sense that it is brought about by conduct that was in some manner job-

related." *Arevalo v. City of Farmers Branch, Tex.*, No. 3:16-CV-1540-D, 2017 WL 1153230, at *12 (N.D. Tex. Mar. 28, 2017) (Fitzwater, J.) (quoting *Moore v. Strike, LLC*, No. 04-16-00324-CV, 2017 WL 96130, at *7 (Tex. App.—San Antonio 2017, no pet.)).

Absent a showing of foreseeability, an employer's negligence in training or supervising an employee cannot be the proximate cause of a plaintiff's injuries. *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 659 (Tex. 1999) (noting that a finding of proximate cause rests on a determination of foreseeability). Thus, when a private employer employs an off-duty police officer, courts have found that the private employer is not directly liable for the officer's on-duty actions. *See, e.g. Ogg v. Dillard's Inc.*, 239 S.W.3d 409, 421 (Tex. App.—Dallas 2007, pet. denied); *Leake v. Half Price Books, Records, Magazines, Inc.*, 918 S.W.2d 559, 564 (Tex. App.––Dallas 1996) ("Because Harmon became an on-duty police officer at the time of the shooting (and was no longer a Half Price Books employee), Half Price Books's retention of Harmon *as an employee* could not have been the proximate cause of the deceased's death.") (emphasis in original). Thus, because Tolerton was working an off-duty security job at Flying J, Pilot's direct liability for his actions depends on whether he was on- or off-duty when the Incident occurred.

Under Texas law, "[i]t is the duty of every peace officer to preserve the peace within the officer's jurisdiction." TEX. CODE CRIM. PROC. art 2.13(a). This responsibility applies regardless of an officer's duty status, thus, "[a]n off-duty police officer who observes a crime immediately becomes an on-duty police officer." *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ); *see also Ogg*, 239 S.W.3d at 419 ("[A]n off-duty police officer's public duty can also be triggered by 'reasonable suspicion' that a person is, has been, or soon will be engaged in criminal activity, the officer need not personally witness a crime to be acting within his official capacity."). It is a violation

of Texas law to "recklessly discharge a firearm inside the corporate limits of a municipality having a population of 100,000 or more." TEX. PEN. CODE ANN. § 42.12(a).

In the case *sub judice*, it is undisputed that, immediately preceding the Incident, Tolerton observed the Decedent firing his gun at two individuals within the corporate limits of Dallas, Texas, a municipality having a population of at least 100,000. Upon witnessing this apparent offense, Tolerton became an on-duty police officer as a matter of law and no longer acted as a Pilot employee. *See Half Price Books*, 883 S.W.2d at 377 (holding that an off-duty police officer employed as a private security guard became an on-duty officer when he saw a crime being committed). Because Tolerton was not a Pilot employee at the time of the Incident, Pilot's allegedly negligent training and supervision of Tolerton as an employee could not have been the proximate cause of Decedent's death. *Ogg*, 239 S.W.3d at 421; *Leake*, 918 S.W.2d at 564; *see also Miller v. SS Hospitality Grp., LLC*, No. 4:17-CV-00847-O, 2018 WL 3092195, at *5 (N.D. Tex. June 5, 2018) (Ray, Jr., J.) (recommending dismissal of all negligence claims against the defendant employer, not only those based on vicarious liability, where it was established that police officers working off-duty jobs for the defendant employer were on-duty at the time the complained-of acts occurred), *adopted by* 2018 WL 3077753 (N.D. Tex. June 20, 2018) (O'Connor, J.).

The Court is not persuaded by Plaintiffs' arguments to the contrary. First, the *Ogg* opinion is not, as Plaintiffs claim, ambiguous simply because the court – after holding that the employer could not be held directly liable for the actions of an on-duty police officer – still analyzed whether the employer negligently hired or retained the officer. Doc. 95 at 26; *see Ogg*, 239 S.W.3d at 422. After disposing of a party's claim on one ground, courts often consider whether dismissal of the same claim on alternative grounds is warranted. Nothing about

considering alternate grounds nullifies a court's original basis for dismissal. Nor is the Court persuaded by Plaintiffs' cryptic assertion that "courts still seem interested in this issue," which is not supported by reference to any Texas case law. Doc. 95 at 26.

      Second, Plaintiffs' attempt to avoid summary judgment by characterizing Tolerton's actions as efforts to protect Pilot's property, eject trespassers, and enforce Pilot's rules and regulations is similarly unavailing. *See* Doc. 95 at 26-29, 42-43; *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.) ("If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer . . . , the trier of fact decides whether the officer was acting as a public officer or as a servant of the employer."). As recounted above, the undisputed facts show that the Incident occurred when Tolerton responded to reports of gunfire near his location, observed Decedent, who was not on Flying J premises, shooting at individuals (in violation of Texas law), and attempted to apprehend him. Under such circumstances, Tolerton's actions can only be reasonably construed as efforts to discharge his public duties as a police officer. *See Mansfield*, 37 S.W.3d at 150 (rejecting plaintiff's argument that an off-duty police officer employee was acting to protect his employer's property, eject trespassers, or enforce his employer's rules where the facts "clearly show[ed]" that the officer became on-duty prior to the incident in question and his actions "[could not] be construed in any other way").

      Third, the factual differences that Plaintiffs note between the *Ogg*, *Leake*, and *Fifth Club* opinions and this case, Doc. 95 at 29-31, are not germane to the finding that Tolerton was an on-duty officer when the Incident occurred. Indeed, Plaintiffs wholly fail to distinguish the facts in the cited opinions from those relevant to such determination here. Equally unpersuasive is Plaintiffs' argument that Tolerton was a Pilot employee and not an independent contractor, a

7

distinction immaterial to the issue before the Court. *See* Doc. 95 at 31-40. As discussed *supra*, the relevant determination is not whether Tolerton was an employee or an independent contractor, but whether he was an on-duty or off-duty police officer at the time of the Incident. *See City of Dallas*, 883 S.W.2d at 377 ("When Harmon saw a crime being committed, he ceased being *an employee or independent contractor* of Half Price Books and became an on-duty police officer.") (emphasis added). Finally, Plaintiffs fail to explain how a reasonable jury could find that Tolerton was off-duty simply because he testified that he worked at Flying J for four years and considered it his regular off-duty job. *See* Doc. 95 at 47-48; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (party opposing summary judgment must "identify specific evidence in the record" and "articulate the precise manner" in which that evidence supports the party's claim) (citation and internal quotation marks omitted). On the contrary, considered in light of the undisputed facts that the Incident occurred when Tolerton observed the commission of a crime off the Flying J premises and immediately attempted to apprehend the parties involved, the conclusion that Plaintiffs champion is decidedly unreasonable.

Finally, Plaintiffs opines that a court acts prematurely by granting summary judgment in favor of a private employer when an officer's duty status is in dispute and argues that a jury should make that determination. *See* Doc. 95 at 43. Plaintiff's position is unsupported and directly contradicted by the applicable law. *See, e.g.*, *Ogg*, 239 S.W.3d at 422 (affirming trial court's summary judgment upon determination of officer's duty status and dismissing direct negligence claims against his private employer).

Accordingly, Plaintiffs' claims against Pilot for negligent hiring, retention, and supervision fail as a matter of law and summary judgment should be granted in Pilot's favor.

### C. Punitive/Exemplary Damages

Pilot argues that because it is entitled to summary judgment on Plaintiffs' claims for actual damages, it is also entitled to summary judgment on Plaintiffs' claims for punitive damages based on allegations of gross negligence or malice. Doc. 68 at 17. In response, Plaintiffs contend that because summary judgment is not warranted on their claims for actual damages, Pilot is not entitled to summary judgment on Plaintiffs' claims for punitive damages. Doc. 95 at 55. As both parties acknowledge, a finding of actual damages is a prerequisite to the imposition of punitive damages. Doc. 68 at 17; Doc. 95 at 55; *see Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 660 (Tex. 2012). And, as concluded *supra*, Pilot is entitled to summary judgment on Plaintiffs' claims, thereby precluding Plaintiffs from recovering alleged actual damages. As such, Pilot is also entitled to summary judgment on Plaintiffs' claims for punitive damages. *Safeshred, Inc.*, 365 S.W.3d at 660.

### D. Texas Wrongful Death Act

Lastly, Pilot moves for summary judgment against DaMon Luster's claim under the Texas Wrongful Death Act because he, as the Decedent's brother, is not a recognized beneficiary under the Act. Doc. 68 at 17-18. In response, Plaintiffs concede this argument, and thus abandon their claim. Doc. 95 at 55; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b) (stating that an action to recover damages under the Texas Wrongful Death Act "is for the exclusive benefit of the surviving spouse, children, and parents of the deceased"). Accordingly, to the extent DaMon Luster brings a claim under the Texas Wrongful Death Act, it fails as a matter of law and should be dismissed.

## IV. CONCLUSION

In light of the foregoing, Defendant Pilot Travel Centers, LLC's *Motion for Summary Judgment*, Doc. 67, should be **GRANTED**. Plaintiffs' claims against Pilot for negligent hiring, training, and supervision, punitive and exemplary damages, as well as any claim brought by DaMon Luster under the Texas Wrongful Death Act should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on July 17, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE